## MARIA L. OLIVER *vs.* CITY OF WORCESTER.

Paths marked out, graded, paved, repaired and kept clear of snow by a town or city, cross-
ing common ground used by the inhabitants as a place of public resort or recreation, and
serving as one means of communication between public streets with which they connect,
between posts such as are usual at the entrance of walks designed for foot passengers, are
not ways "opened and dedicated to the public use" within the meaning of the Gen. Sts.
*c.* 43, § 82, for damages arising from defects in which the town or city may be liable to
an action under § 83.

**If,** in repairing a building belonging to a city, and used in part for municipal purposes, but in considerable part also as a source of revenue by being let for rent, which is situated on a public common crossed by footpaths cared for by the city and used by the public for more than twenty years, the agents or servants of the city, acting by its authority, dig a hole in the ground adjoining, and negligently leave it open and unguarded, so that a person walking on one of the paths and using due care falls into it and is injured, the city is liable to an action at common law for the injury.

TORT for injuries sustained by falling into a hole in the ground on the south side of the city hall, upon the public common, in Worcester, on the evening of Sunday, April 5, 1866. Writ dated November 8, 1866.

At the trial in the superior court, before *Rockwell*, J., these facts appeared: The plaintiff resided in Worcester, and at the time of the accident was returning home, with another woman, from an evening service at the meeting-house of a religious society on Park Street, south of the common. "There were several gravelled walks crossing the common in various directions; one of which, leading from Park Street to Front Street, which bounds the common on the north, they followed till they reached a point east from the southeast corner of the city hall. Here they turned from this path, which was their direct route, on to another gravelled path, leading to the southeast corner of the city hall, and to a brick pavement some ten feet in width, and surrounding the city hall, on the northerly side lying contiguous to Front Street, and, on the west side, to Main Street. Where these last named walks connected with Main Street and Front Street, posts were erected, such as are usual at the entrances of walks designed for foot passengers. The city hall is on the common, at the northwest corner thereof. At the time of the accident, the defendants were repairing the city hall, and among other works had made an excavation on the south side of the building, for the purpose of introducing steam works into the hall. This excavation extended from the building the entire width of the brick pavement, and was about forty feet in length and eight feet in depth, its west end being some fifteen feet from that end of the hall, and its east end about fifty feet from the east end of the hall. The plaintiff and her companion attempted to pass to Main Street along this pavement on the southerly side of the hall, and fel.

into this excavation.    On the west and south sides the excava-
tion was guarded.    As to its condition on the east side the tes-
timony was conflicting."

"The defendants introduced testimony tending to show that
they had been repairing the hall for some time, during which
the space on the south side of the hall, including the brick pave-
ment, had been used for the deposit of rubbish and building
materials ; that this excavation had been there for a number of
days ; and that the workmen, on leaving work Saturday night,
left a stick of timber, eight inches by twelve, across the pave-
ment, east from the excavation, the end next the hall resting on
a mortar tub against the building, and the other end on a heap
of rubbish outside the pavement. The plaintiff introduced evi-
dence contradicting this, and tending to show that for more than
twenty years foot passengers had been accustomed to pass from
Main Street to the diagonal path across the common aforesaid,
on the south side of the city hall, between that building and the
Old South Church, but whether over the location of the walk
as at present paved and graded, or otherwise, did not appear.
It was in evidence that this pavement was laid by the city in
1852 ; but there was no evidence that it or the other walks on
the common with which it connected were ever laid out and es-
tablished as public sidewalks or public ways of any kind."

"It was also in evidence that there was a walk leading from
the northwest to the southeast corner of the common diagonally
across it, and connecting at each end with public streets; that
at each end of said walk there were posts erected, as is usual at
the entrance of ways designed for foot passengers ; that at the
easterly end of the paved walk in which the excavation was
made there was a raised gravel walk, of the same width as the
paved walk, leading to and connecting with the diagonal walk
before referred to ; that there were other walks across said com-
mon, connecting with public streets; that said walks were used
as means of communication from one part of the city to the
other by foot passengers ; and that said walks had been kept in
repair, and snow paths cleaned upon them, by the city."

" The defendants asked the judge to rule, that the place where the accident occurred was not a way which the city was bound to keep in repair; that it was not a way opened and dedicated to the public use, within the intent and subject to the provisions of the Gen. Sts. *c.* 43, §§ 82, 83; that the city, by gravelling or paving and keeping in repair walks upon a public common, mainly intended for air, shade and pleasure, and leaving them open to foot passengers, merely gives a license to foot passengers to walk in them, which license is revocable, and the jury might find that it was revoked in this case; and that, if the jury should find that the excavation was left perfectly guarded Saturday night, and there was no evidence that the guard had been changed or destroyed for twenty-four hours previous to the accident, or that the city had had any notice of the alteration, they should find for the defendants.

" These rulings the judge declined to give in the form requested, but instructed the jury as follows: As there is no evidence either that the pavement, or the ground under it, running along the south side of the city hall, was ever laid out as a highway, and no evidence that for twenty years or more it had been used as a highway or way of any kind, the city was not obliged to keep it in repair as a highway or way. The liability of the city in regard to this locality rests entirely upon statute, and arises, if at all, out of the Gen. Sts. *c.* 43, §§ 82, 83. To sustain her case under that chapter, the plaintiff must prove affirmatively that the said pavement or paved way, where it was displaced by the excavation, had been opened and dedicated to the public use, though it had not become a public way; that the plaintiff was using it as a way to walk on, for her lawful purposes; that it was not closed, at or near the place of the excavation, sufficiently to prevent her from it, or to make her acquainted with its condition; that she was in the exercise of due care; that her own want of care did not contribute to the injury; and that the injury was solely occasioned by the negligence or want of care on the part of the defendants. If the plaintiff satisfies the jury, upon the whole evidence, of these positions as facts, she may recover. The plaintiff cannot recovei

unless the jury are satisfied that the paved way had been opened and dedicated as a way to be used by the public; nor can they recover, even if it was thus opened and dedicated, if it appears that it was closed from the public travel so as to prevent persons passing from coming upon the excavation, or that sufficient notice was given to seasonably prevent persons from coming upon it. It is a question of fact, whether it was a way opened and dedicated to the purposes of public travel by foot passengers. If the jury are satisfied that in 1852 the city laid down the pavement and left it open for travel; that it connected at its westerly end with Main Street, or with the sidewalk adjacent to Main Street, and at its easterly end with a worn and gravelled path, connecting it with one or more of the footways across the common; and that it was and had been used as a thoroughfare for foot passengers; the jury are authorized to find that it was such a way, opened and dedicated, but not having become a public way, and that the city was bound by law, having displaced the paved way by the excavation, to protect the public travel by closing the way, or giving sufficient notice of it. The defendants contend, and ask a ruling, as matter of law, substantially that, as this paved way was upon the public common, for foot passengers only, it does not come within the scope and purpose of the statute relating to ways opened and dedicated which have not become public highways, because such paths upon the common are mainly intended for air, shade and comfort, for healthy and pleasant walks; and that preparing and leaving them open by the city only gives a license to foot passengers to walk in them, which license is revocable, and in this case was revoked. But I decline to give such instructions; for, if this paved way was part of a walk opened and used as a passageway across the common, and, in connection with other paths travelled by foot passengers, forming a thoroughfare between public highways surrounding the common, it is within those statute provisions. The plaintiff's complaint is, that the excavation was not properly guarded at its easterly end, and I am requested to rule, as matter of law upon the evidence, that it was not; but the evidence is somewhat conflicting, and it is a

question for the jury, upon the principles before stated, whether or not it was properly guarded."

The jury found for the plaintiff, and the defendants alleged exceptions, which were argued at October term 1868.

*W. W. Rice,* for the defendants.

*G. F. Verry,* for the plaintiff.

Hoar, J. This case was submitted to the jury with the instruction that the place in which the plaintiff sustained an injury was not, upon the evidence, a place which the defendants were obliged by law to keep in repair as a highway or way of any kind; and that their liability in the action depended wholly upon the Gen. Sts. *c.* 43, §§ 82, 83. The question upon the exceptions is therefore merely upon the application of those sections to the facts which were in evidence at the trial. These sections are as follows :

" Sect. 82. No way opened and dedicated to the public use, which has not become a public way, shall be chargeable to a city or town as a highway or town way, unless the same is laid out and established by such city or town in the manner prescribed by the statutes of the Commonwealth.

" Sect. 83. The mayor and aldermen and selectmen shall, whenever the public safety demands it, direct and cause the entrances of such ways, entering on and uniting with an existing public highway, to be closed up ; or may by other sufficient means caution the public against entering upon such ways; and if any such way shall not be closed, or sufficient notice given that the same is dangerous, the city or town shall be liable for damages arising from defects therein in the same manner as if it had been duly laid out and established."

The evidence showed that the plaintiff sustained an injury by falling into an excavation negligently left open and unguarded in a footpath laid out across the common in the city of Worcester, at a place where it passed one side of the city hall. The path by the city hall was paved with brick, and at the points on Front Street and Main Street where the path left the common there were posts erected such as are usual at the entrances of walks designed for foot passengers. The evidence therefore

showed, conclusively, that there was notice to the public that there was no other way, at the place where the accident occurred, than a footway.

It is, in the first place, at least doubtful whether the statute above cited has any reference to footpaths. Section 82 recites that " no way " " shall be chargeable to a city or town as a highway or town way," unless laid out, &c. The direction in § 83 is as to the closing of " such ways." " Such ways " would therefore seem to refer to ways which might become chargeable to a city or town as highways or town ways. Whether it is competent for any public officer or public body to lay out a public way for foot passengers only, was considered as an open question in *Hemphill* v. *Boston*, 8 Cush. 195. That such a way would hardly come within the definition of a highway or town way, in the view of the statute, may perhaps be inferred from the provision that highways and town ways are to be kept in repair by the city or town in which they are situated, " so that the same may be safe and convenient for travellers, with their horses, teams and carriages, at all seasons of the year." Gen. Sts. *c.* 44, § 1.

But without deciding that question, the court are of opinion that these sections of the statute have no application whatever to such paths as those to which the evidence in this case relates; because the facts proved had no tendency to show that the footpath across the common was a way opened and dedicated to the public use. The whole common is in one sense dedicated to the public use, as a place of public resort and recreation, over any part of which persons may pass freely, unless restricted for some public and sufficient reason. But in marking out suitable parts of it for convenient passing on foot, or even in preparing paths with gravel or pavements, we can see no evidence of intention on the part of the city or its officers to make any new dedication of such paths to a new and distinct public use; nor any reason which the public would have to suppose that they were highways or town ways. The reason of the statute provision obviously was, that, while no new highways or town ways were to be made chargeable upon cities and towns, un-

less regularly laid out in the manner prescribed by law, there might be ways opened and laid out, connected with the public ways, and apparently themselves public ways, which travellers would have no means of knowing were not legally laid out and kept in repair as such; and, to prevent the possible consequences of a want of repair in a way of this description, if it was not safe to travel, cities and towns were required to close it up, or give notice that it was dangerous, or else be subject to the same liability for its condition as if it were a legal way. But travellers would be under no liability to mistake a path over a common, to enter upon which they must pass between posts in a fence, for a public road. The direction and character of such paths might be varied from time to time, as the convenience of the city, or the uses to be made of other parts of the ground, might at different times require. But to prepare or allow a particular part of a common to be used for walking would not be to dedicate it to the public for that special purpose; because the whole piece of land was already devoted to public use.

The liability of towns for defects in ways is wholly the creation of the statutes, and is a liability strictly limited and peculiar. Because the city owns the land, and there are walks over it, no more gives rise to the special obligation attending the repair of public ways, than it would in the case of the steps and stairways of the city hall, or of a school-house.

If any person has negligently allowed a dangerous place to be opened in any place under his control, and failed to give proper notice to persons exposed to the danger, who come to the place rightfully, by his invitation or license, and to whom he owes the duty to caution them against it, he will be responsible for any injury which they sustain by reason of his negligence; but this responsibility has nothing to do with the statute provisions for the repair of highways, and depends on different principles. As the rights of the plaintiff, therefore, were erroneously made to rest upon the special statute provisions above referred to, the instructions given to the jury were not such as the case required, and the defendants are entitled to a new trial.

*Exceptions sustained.*

A new trial was had in the superior court, before *Devens*, J, who made a report thereof, of which the material parts were as follows :

"It appeared in evidence that in May 1866 a joint special committee of the city council of Worcester was authorized, by vote of the city council, to cause certain alterations and improvements to be made in the city hall. While these were in progress, in July 1866, it was voted by the city council 'that the joint special committee on the alteration of the city hall building be authorized to make the necessary and proper arrangements for heating, lighting and furnishing the rooms in the city hall building, and that the expense be charged to the appropriation for contingent expenses.' The committee decided to heat the building by steam, and to locate the boiler under ground, just beyond the southerly side of the hall, in the common, and underneath one of the walks thereon, (which the plaintiff offered evidence tending to show had been used by the public for a walk for more than twenty years,) and employed a mechanic to do by the day the work necessary for placing the boiler. In the performance of this work, the excavation into which the plaintiff fell was dug for the purpose of placing the boiler; and subsequently it was placed there, and the city hall building has since been warmed by the steam furnished by it. The mechanic and his men were paid for this work by the city treasurer by the day. The excavation was about eight feet deep, extended southerly about fifteen feet from the cellar proper of the city hall, and about forty feet from east to west. There was evidence tending to show that the easterly end of this excavation, at the time the plaintiff received her injuries, was carelessly left unguarded, and that, while she was walking on said walk and using due care, she fell into the same and was injured.

"The city hall, the Old South meeting-house, and a public school-house, are situated upon the common, which at present contains about nine acres and is fenced. Upright posts are placed at the entrances of various walks leading across the common from the public ways by which it is surrounded. This common is the residue of twenty acres originally reserved and

laid out by the committee appointed by the general court for superintending the settlement of Worcester, at a meeting held July 6, 1669, under the following vote : ' That there be a place reserved in common near the centre of the town, convenient for that purpose, about twenty acres, for a training place, and to set a school-house as near as may be where the meeting-house shall be placed.'

" The present common has been used, for a time to which the memory of man runneth not to the contrary, by the inhabitants of the town, for purposes of air, recreation, walks, and passing from one section of the town to another ; and upon it walks, of which said paved walk was one, have been laid out and graded from time to time, which have always been prepared and cared for by the town and city.   The city hall was erected by vote of the town in 1824.   It appears from the town records that the portion of the common where it stands was then under lease from the town to Samuel Flagg, which lease was bought by the town for the purpose of building the town hall.   In 1842 the common was fenced, graded, ornamented with shade trees, and walks thereon were laid out by a committee chosen for that purpose by the town ; a portion of the expense of which was paid by the town and a portion by private contribution.

" In 1852 a space around the city hall, including the place of excavation, was paved with brick by the superintendent of streets of the city, and the expense thereof was paid from the city treasury.   Various travelled walks across the Common led to this paved walk, from one of which the plaintiff came upon it at the time of the injury.   Foot passengers were accustomed to pass and repass over this paved walk, and over the gravelled paths aforesaid to and from Main Street and other streets.

" Before the city hall was repaired and improved as aforesaid, the city had leased a part of the basement for markets.   At the time of the injury, the building, being under repair, was not occupied for any purpose.   But ever since the repairs were completed the entire building has been used for city offices, and meetings of the city government, and ward-rooms, excepting that the municipal court and police court for the city have

occupied a part of the second story, for which the city receives rent from the county; and the entire basement is used for a lockup and for police offices for the city police, which said rooms were prepared for these purposes at the time of the repairs aforesaid. All of said repairs and alterations, including the placing the boiler in the excavation, were paid for by the city, and were done under the special superintendence and direction of the committee chosen for that purpose as aforesaid.

" Upon these facts, the judge ruled that the plaintiff could not maintain an action against the city, instructed the jury to return a verdict for the defendants, and reported the case, the verdict to stand, or to be set aside and a new trial ordered, as the supreme judicial court should determine."

*G. F. Verry*, for the plaintiff.

*W. W. Rice*, for the defendants.

GRAY, J.    The distinction is well established between the responsibilities of towns and cities for acts done in their public capacity, in the discharge of duties imposed upon them by the legislature for the public benefit, and for acts done in what may be called their private character, in the management of property or rights voluntarily held by them for their own immediate profit or advantage as a corporation, although inuring, of course, ultimately to the benefit of the public.

To render municipal corporations liable to private actions for omission or neglect to perform a corporate duty imposed by general law on all towns and cities alike, and from the performance of which they derive no compensation or benefit in their corporate capacity, an express statute is doubtless necessary.    Such is the well settled rule in actions against towns or cities for defects in highways.    5 Edw. IV. 2, pl. 24.    *Riddle* v. *Proprietors of Locks & Canals*, 7 Mass. 169, 187.    *Mower* v. *Leicester*, 9 Mass. 247.    *Holman* v. *Townsend*, 13 Met. 297. *Brady* v. *Lowell*, 3 Cush. 121.    *Providence* v. *Clapp*, 17 How. 161, 167.    The same rule has been held to govern an action against a town by a legal voter therein, for an injury suffered while attending a town meeting, from the want of repair in the town-house erected and maintained by the town for municipal

purposes only ; or by a child, attending a public school, for an injury suffered from falling into a dangerous excavation in the school-house yard, the existence of which was known to the town, and which had been dug by order of the selectmen to obtain gravel for the repair of the highways of the town and to make a regular slope from the nearest highway to the school-house. *Eastman* v. *Meredith*, 36 N. H. 284. *Bigelow* v. *Randolph*, 14 Gray, 541.

But this rule does not exempt towns and cities from the liability to which other corporations are subject, for negligence in managing or dealing with property or rights held by them for their own advantage or emolument. Thus where a special charter, accepted by a city or town, or granted at its request, requires it to construct public works, and enables it to assess the expense thereof upon those immediately benefited thereby, or to derive benefit in its own corporate capacity from the use thereof, by way of tolls or otherwise, the city or town is liable, as any other corporation would be, for any injury done to any person in the negligent exercise of the powers so conferred. *Henley* v. *Lyme*, 5 Bing. 91 ; *S. C.* 3 B. & Ad. 77 ; 1 Scott, 29 ; 1 Bing. N. C. 222 ; 2 Cl. & Fin. 331 ; 8 Bligh, (N. S.) 690. *Weet* v. *Brockport*, 16 N. Y. 161 note. *Weightman* v. *Washington*, 1 Black, 39. *Nebraska City* v. *Campbell*, 2 Black, 590. Perley, C. J., in *Eastman* v. *Meredith*, 36 N. H. 289–294. Metcalf, J., in *Bigelow* v. *Randolph*, 14 Gray, 543. *Child* v. *Boston*, 4 Allen, 41, 51.

So where a municipal corporation holds or deals with property as its own, not for the direct and immediate use of the public, but for its own benefit, by receiving rents or otherwise, in the same way as a private owner might, it is liable to the same extent as he would be, for the negligent management thereof to the injury of others. In *Thayer* v. *Boston*, 19 Pick. 511, it was held that a city was liable for the acts of its agents, previously authorized or afterwards ratified by the city, in obstructing a highway to the special and peculiar injury of an individual, by erecting buildings under a claim of title in the fee of the land, for which the city received rent. In *Anthony* v. *Adams*, 1 Met. 284, cited for the defendant, the town was held not liable, solely

because the act which occasioned the injury was one which the town had not authorized, and was not required by law to do. In *Bailey* v. *New York*, 3 Hill, 531, Chief Justice Nelson clearly stated the distinction between acts done by a city or town as a municipal or public body, exclusively for public purposes, and those done for its own private advantage or emolument; and assumed, as unquestionable, that " municipal corporations, in their private character as owners and occupiers of lands and houses, are regarded in the same light as individual owners and occupiers and dealt with accordingly." In *Pittsburgh* v. *Grier*, 22 Penn. State, 54, a city was held liable to a private action for an injury suffered by an individual by reason of a defect in a wharf, of which the city had the exclusive control, and for the use of which it received wharfage. In *Eastman* v. *Meredith*, 36 N. H. 295, 296, Chief Justice Perley said, " Towns and other municipal corporations, including counties in this state, have power, for certain purposes, to hold and manage property, real and personal; and for private injuries, caused by the improper management of their property, as such, they have been held to the general liability of private corporations and natural persons that own and manage the same kind of property." " So far as they are the owners and managers of property, there would seem to be no sound reason for exempting them from the general maxim which requires an individual so to use his own that he shall not injure that which belongs to another." And in *Mersey Docks Trustees* v. *Gibbs*, 11 H. L. Cas. 687; *S. C.* Law Rep. 1 H. L. 93; the house of lords, upon an elaborate revision of the English cases, held that the trustees of the docks at Liverpool, incorporated by act of parliament for the purpose of making and maintaining docks and warehouses for the use of the public, with authority to receive rates for such use, which were to be applied exclusively to the maintenance of the docks and warehouses and the payment of the debt incurred in their construction, were liable to an action by an individual for an injury to nis vessel in entering one of the docks, by striking upon a bank of mud which their servants and agents had negligently suffered to accumulate at and about the entrance.

In the case at bar, it appears from the report of the learned judge who presided at the second trial, that the evidence tended to show that the plaintiff, while walking, using due care, upon a footpath which had been used by the public for more than twenty years, and had been laid out and graded from time to time and prepared and cared for by the town and city of Worcester, and was within the public common which had been used by the inhabitants of the town for a much longer period, fell into a deep excavation, made by direction of a joint committee of the city council, under the authority and at the expense of the city, in the course of repairing and improving a building standing within the common, used by the city principally for municipal purposes, but a substantial portion of which, both before and after the time of the accident, the city leased, and received rent for, either from private persons or from the county, and which was therefore held and used by the city, not for municipal purposes exclusively, but in considerable part as a source of revenue; and that this excavation was within a few feet of the building, and was carelessly left unguarded. If, in the course of repairing this building, the servants and agents of the city, acting by its authority, negligently suffered the adjoining land within its control to be in a dangerous condition, without proper notice to persons exposed to the danger, coming there rightfully under an implied invitation and license, and using due care, the city was responsible, as any private owner would be, for an injury sustained by such a person by reason of such negligence; and it is immaterial whether the title in the land was or was not in the defendant. *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216. The case should therefore have been submitted to the jury. *New trial ordered.*