## JOHN McDOUGALL *vs.* CITY OF SALEM.

A bridge having in it a draw, free to all vessels, was laid out under a statute as a highway by county commissioners, by whose order a city was obliged to keep the bridge in repair and bear the expense of raising the draw. While a vessel was passing through the open draw, one of her crew who had got upon the raised leaf of the draw to aid her passage was injured by a defect in the construction of the draw. *Held*, that the city was not liable to him in damages for the injury.

TORT to recover for personal injuries suffered by the plaintiff through the defendants' negligence in improperly maintaining the Essex Bridge, leading from Salem to Beverly. At the trial in the Superior Court, before *Rockwell*, J., the plaintiff, in opening his case, stated that he should prove the following facts:

By the St. of 1787, *c.* 27, certain persons were incorporated for the purpose of building the Essex Bridge, and were required to keep in the bridge a draw at least thirty feet wide, and to deliver up the bridge to the Commonwealth at the end of seventy years, during which time they were authorized to take tolls from passengers over the bridge, but not from vessels passing the draw. The corporation did build the bridge, with the draw now in use, and managed it till by the St. of 1857, *c.* 268, provision was made for the conveyance of the bridge and franchise to trustees to hold on certain trusts and conditions, one of which was that a draw at least thirty feet wide should be maintained. The trustees were empowered to take the same tolls as the corporation had taken. By the St. of 1868, *c.* 309, § 8, the county commissioners of Essex were required to lay out the bridge as a highway, which they did, making a decree "that so much of the bridge as lies southerly of the northerly side of the draw shall be maintained, kept in repair and supported, and that the expense thereof and of raising the draw thereon shall be paid by the city of Salem." The width of the draw, at bottom, has always been twenty-nine feet nine inches, and it was so built that its two sides or leaves, when hoisted up from the centre as far as possible, were not perpendicular to the bridge, but inclined toward each other equally, so that the space between them at the top was but twenty-seven feet; and there was a projection of about an inch made by an iron band round

the beam which formed the outer edge of the leaf c the **draw** nearest Salem.

In October 1870, the plaintiff was one of the crew of a schooner passing through the draw, and was sent by the captain into the rigging to prevent it from catching, extricate it where it had caught on the side of the draw, and assist in carrying the schooner through the draw, and while the plaintiff was thus engaged on the side next to Salem, and while the schooner was passing through the draw, her rigging caught in the leaves of the draw, and against the iron band projecting from the leaf of the draw nearest Salem, and in order to extricate it the plaintiff stepped upon the top of the leaf and extricated the rigging, which, having become loosed, straightened out with great violence, and threw the plaintiff off from the leaf down upon the bridge, whereby he received severe injuries; the rigging caught in consequence of the insufficiency of the width of the draw, and of the projection of the iron band above the surface of the leaf.

It was a reasonable and usual precaution for the captain to station his men as above set forth ; and in the plaintiff's handling of the rigging, and when he was thrown down on the bridge, he was in the exercise of due care, and due care was used on the part of those in charge of the vessel while passing through the draw.

It would have been practicable for the defendants to have built the draw thirty feet wide and in such a manner that the leaves thereof might be lifted to a position perpendicular to the surface of the bridge, and to have sunk the iron band into the beam to a level with the surface of the beam.

The judge ruled that on these facts the plaintiff could not maintain his action, and, with the consent of the parties, reported the case for the consideration of this court; if the court should be of opinion that the plaintiff could maintain his action upon proof of the facts as above stated, then the case to stand for trial; otherwise judgment to be entered for the defendants.

*C. G. Thomas,* for the plaintiff, cited *Bigelow* v. *Randolph,* 14 Gray, 541; *Blodgett* v. *Boston,* 8 Allen, 237; *Oliver* v. *Worcester,* 102 Mass. 489; *Bliss* v. *Deerfield,* 13 Pick. 102; *Eastman* v. *Meredith,* 36 N. H. 284; *Bailey* v. *New York,* 3 Hill, 531

*New York* v. *Furze*, Ib. 612; *Lloyd* v. *New York*, 1 Seld. 369; Sts. 1787, *c.* 27; 1857, *c.* 268, § 3, *cl.* 2; 1867, *c.* 296, § 1; 1868, *c.* 309, § 8.

*J. A. Gillis*, for the defendants.

CHAPMAN, C. J.  By the action of the county commissioners of Essex, under the St. of 1868, *c.* 309, the bridge in question became a highway.  The city of Salem was under no obligation to keep it in repair except such as was created by statute.  They were bound by the Gen. Sts. *c.* 44, § 1, to keep it in such repair that it would be safe and convenient for travellers.  Their liability to pay damages was created by § 22.  But the statute made them liable to travellers only.  *Stickney* v. *Salem*, 3 Allen, 374. *Blodgett* v. *Boston*, 8 Allen, 237.  The plaintiff was not a traveller on the highway.  The wings of the draw were raised in order that the vessel which he was assisting to navigate might pass through, and he stepped upon the elevated wing when it was in no condition to be used for travel, in order that he might free the rigging of the vessel.  This business had no connection with travelling, and the statute does not apply to it.  Nor had the defendants any beneficial interest in the bridge derived from the receipt of tolls or compensation for allowing vessels to pass, so as to make them liable to the plaintiff as a navigator, even if we were to assume that the draw was kept in an improper condition. The principle stated in *Oliver* v. *Worcester*, 102 Mass. 489, does not apply to the case.               *Judgment for the defendants.*