RIPLEY v. THE BOARDS OF CHOSEN FREEHOLDERS OF
THE COUNTIES OF ESSEX AND HUDSON.

1. The act of March 15th, 1860, (*Rev., p.* 86, ¿ 9,) which makes any town-
ship or board of chosen freeholders which is by law chargeable with
the erection or reparation of bridges, liable to an action for injuries to
persons or property, sustained by reason of a wrongful neglect to erect,
re-build or repair any bridge, gives a remedy by action for all injuries to

persons or property for the safety of which the duty of re-building or repairing the particular bridge is by law cast upon the municipal body. The right of action is not limited to such injuries as happen to persons or property passing or being carried over the bridge.

2. The bridge over the Passaic, at Newark, was erected under the act of November 24th, 1790, and became vested in the counties of Essex and Hudson under the act of March 14th, 1871. The act of 1790 provided for the construction and maintenance, in good order and sufficient repair, of a draw in the bridge, through which vessels navigating the Passaic might pass. *Held,* That the two counties were liable, under the acts of 1860, to an action for injuries to the plaintiff's vessel, received in passing through the bridge, where the inability to remove the draw was due to a want of repair of the bridge.

3. The act of February 27th, 1833, entitled "An act for the protection of bridges in this state," (*Rev.*, p. 88, § 17,) does not require the commander of a vessel, in approaching a draw-bridge, to take down the sails entirely. It only makes it his duty to lower his sails, so as to enable the vessel to approach the bridge with such diminished speed as will permit the removal of the draw, and enable the vessel to pass gently through the bridge.

On rule to show cause why a verdict against the defendants should not be set aside.

Argued at November Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the rule, *J. W. Taylor.*

*Contra, J. A. Cobb.*

The opinion of the court was delivered by

DEPUE, J. The plaintiff's vessel, in navigating the Passaic, came in collision with the draw of the bridge over the river at the foot of Bridge street, in the city of Newark. The proof was that the space between the two piers over which the draw swung was fifty-five feet; that at the time in question the draw was opened so far as only to afford, for the passage of plaintiff's vessel, a space of from eighteen to twenty-four feet; and that the shrouds of the vessel, in the attempt to pass through, were caught on the end of the draw, causing considerable damage to the vessel.

For this injury the plaintiff brought this suit, and re-covered a verdict.

The declaration contains two counts. In the first count the allegation is of negligence in the management of the draw. In the second, the plaintiff charges that it was the duty of the defendants to keep the bridge and draw in proper condition and repair; that the bridge and draw were out of repair, and that, because thereof, the plaintiff's vessel was injured in going through the said draw.

The erection of this bridge, and a bridge over the Hacken-sack, was authorized by an act of the legislature, passed November 24th, 1790. *Pamph. L., p.* 685. By this act, five commissioners were appointed, who were authorized to select sites for such bridges, and to erect, or cause to be erected, bridges at those sites, and to lay out a road from the court-house in Newark to Powles' Hook. These commis-sioners were not created a corporation. They were merely agents of the state, exercising a public trust; but by the act they were invested with the property of the bridges for the term of ninety-nine years, and with the franchise of taking tolls. *Bridge Co.* v. *Hoboken Land and Improvement Co.,* 2 *Beas.* 81, 503.

By the tenth and eleventh sections, the commissioners, or the major part of them, were authorized to let the said bridges to farm to any person or persons, or contract with any person or persons for the building of said bridges, for such toll, or for so many years and upon such conditions as in their discretion might appear expedient; and the contract so made was declared by the twelfth section to be binding on the parties contracting as well as on the State of New Jersey.

By the fifth section, provision was made for the mode in which the bridges should be constructed, with respect to the navigation of the river, and for draws to permit the passage of vessels.

By the twenty-first section, it was enacted that the person or persons to whom the said bridges, or either of them, should from time to time be let, should be obliged to keep

and maintain the draw or draws for the free passage of vessels with fixed masts, required to be constructed by the fifth section, in each and both of said rivers, in good order and sufficient repair, and at all times give good attendance at said draw or draws, and raise the same up when required, and peaceably, freely and quietly suffer every vessel or vessels to pass unmolested through the said draw or draws. A penalty for negligence in either of these respects, by indictment, was prescribed.

The commissioners, in pursuance of the power conferred by this act, made a contract by indenture under seal, dated February 19th, 1793, with Uzal Ogden, and other persons named as individuals, for building these bridges. By this indenture, Ogden and his associates agreed to build and erect the bridges, and the commissioners, in consideration thereof, demised, granted and to farm let the bridges to be erected, with the tolls appertaining thereto, not exceeding certain specified rates, to the said individuals, for the term of ninety-seven years, from November 24th, 1792. The term for which the demise was made in fact extended over the whole period of ninety-nine years, mentioned in the act of 1790.

The bridges were erected under this contract, and, after their completion, the lessees became incorporated under the name of "The Proprietors of the Bridges over the Rivers Passaic and Hackensack," by an act passed March 7th, 1797.

By an act passed March 14th, 1871, (*Pamph. L., p.* 500,) commissioners were appointed, with power to contract in behalf of the counties of Essex and Hudson with the proprietors, for the purchase of the bridge over the Passaic for public use, and also for the extinguishment of their exclusive franchise; and in the event of the inability of the commissioners to make an agreement of purchase, the condemnation of said bridge and franchise was authorized, on a valuation thereof to be made by the said commissioners; and, on payment of such valuation, the title to and right of possession of the said bridge, should become vested in the respective boards of freeholders of said counties for public use, " in the same manner

as if the same had been erected by said boards in pursuance of law."

The two counties acquired title to the bridge in question under this act.

It is unnecessary on this occasion to consider whether this action is maintainable against the defendants on common law principles, as established by the decisions of the courts of this state. On a rule to show cause, the court will consider the whole case as made by the issues on the record, and by the evidence at the trial.

It is undeniable that, by the act of 1790, a duty arises to construct, maintain and keep in repair a draw as part of the bridge in question, as well as a duty in the management of the draw, to permit the free passage of vessels. The legislature properly appreciated the importance of the navigation of the river, and carefully provided for its safety.

The evidence at the trial established the fact that the bridge and draw were out of repair, and that the inability of the person in charge to remove it in season to permit the plaintiff's vessel to pass, was due to the defective condition of the bridge. There was no proof of incompetency in the person in charge, or of neglect on his part. He endeavored to remove the draw, but was unable to do so. His testimony is that it required ten and a half turns of the lever to entirely remove the draw, and that he had done only six and a half of those when the vessel struck; that he knew that he had got exactly at that place, for at the end of six and a half turns the draw turned hard and slow, and that the sagging of the bridge made that. The testimony on the side of the plaintiff also was, that the tender tried to get the draw open, and could not, and that the bridge had sagged, and was out of repair, which made the working of the draw more difficult. The evidence was full and satisfactory on that point.

The liability of municipal bodies to actions for injuries resulting from neglect to erect, re-build or repair bridges, where they are chargeable by law with the duty of erection or reparation, is no longer left to rest upon the rules of the

common law.   By the statute of March 15th, 1860, liability to an action for such injuries is expressly imposed.   *Rev., p.* 86, § 9.   This statute enacts that in all cases where a township, or the board of chosen freeholders of a county, are chargeable by law with the erection, re-building or repair of any bridge or bridges, and the said township or board of chosen freeholders shall wrongfully neglect to erect, re-build or repair the same, by reason whereof any person or persons shall receive injury or damage in his or their persons or property, he or they may bring his or their action of trespass on the case against said township, or said board of chosen freeholders, as the case may be, and recover judgment against them to the extent of all such damage sustained as aforesaid, which said judgment shall be paid by the township or county, as the case may be.

It was contended by the defendants' counsel that this statute is unavailable to the plaintiff, to enable him to recover for the kind of injury he sustained; that the act gives a remedy only to persons injured in person or property when passing or being carried over the bridge; and *Livermore* v. *Freeholders of Camden,* 5 *Dutcher* 245 ; *S. C.,* 2 *Vroom* 507 ; *McDougall* v. *Salem,* 110 *Mass.* 21, were cited in support of his contention.   Neither of these cases is in point.   The decision in Livermore *v.* Freeholders of Camden was made under the twenty-first section of the act of 1859, (*Pamph. L.,* *p.* 285,) which, not only in its language, but from the manifest object of the act of which it was part, plainly showed that remedy for injuries received in the use of a bridge for the purpose of a passage over, only was contemplated.   The case from Massachusetts was also decided under a statute of similar import.   *Gen. Stat., p.* 245.

The act of 1860 will not admit of such a limited construction.   It is a section by itself, and the language used is as comprehensive as well could be.   The condition on which responsibility arises is a failure to erect, re-build or repair, where the township or county is, by law, required to erect, re-build or repair; and the person to whom the action is

given is any person who shall receive injury or damage in person or property by reason of such neglect. There is nothing in language or connection that would warrant a departure from the plain signification of the words used. If it were permissible to go outside the language used to make a construction, the fact that the legislature, with the act of 1859 in force, deemed additional legislation in more general terms advisable, raises a strong implication that the new act was intended to have a wider scope than the old one, and to remedy defects that were discovered therein. The construction contended for by the defendants' counsel is precisely that judicially given to the act of 1859, and gives no effect to the more general and comprehensive language of the new act.

The act of 1860 is a remedial statute. It should be construed to give a remedy by action for all injuries to persons or property, for the safety of which the duty of building, rebuilding or repairing the particular bridge is by law cast upon the municipal body, where the damages result directly from neglect in the performance of such duty.

The free passage of vessels through this bridge in navigating the river, was as much an object of protection in the act of 1790, as the safe passage of persons or property over the bridge. The location and construction of the bridge and draw, and the entrance-way into it, are prescribed in the act with a view to effectually secure the enjoyment of the rights of navigation. The plaintiff's vessel was injured in the course of the navigation of the river, and the injury resulted directly from the defendant's neglect to keep the bridge in proper repair. The right to maintain an action for that injury is not only within the words of the act of 1860, but is also within the spirit and reason of the act.

It was further made a point at the trial that the plaintiff was excluded from a recovery in this case, for the reason that the commander of the vessel was guilty of contributory negligence in not lowering his sails in compliance with the act of February 27th, 1833, entitled "An act for the protection of bridges in this state." That act forbids the com-

mander of a vessel approaching "within ten rods of any drawbridge, without first lowering his sails, so as to prevent the vessel from coming up against the bridge until it is hoisted, so that they can pass gently through." *Rev., p.* 88, § 17. The judge charged the jury that it was the duty of the commander, in approaching the draw, to give the proper signal for the removal of the draw, and to so control his sails —not to take them down, but to lower them—as to enable him to approach the bridge with such diminished speed as would permit the removal of the draw, and enable the vessel to pass gently through the bridge. This construction of the act of 1833 was correct, and the question of contributory negligence was properly left to the jury.

The rule to show cause should be discharged.