Dickman, .T.
Whether the verdict is supported by the evidence, we are not called upon to determine, there being no portion of the evidence embodied in the record by bill of exceptions. Nor need we inquire whether there was error in the charge of the court to the jury, as no such error is assigned. In determining whether the verdict is contrary to law, the controlling question that arises is, whether a cause of action sufficient to sustain the judgment rendered is stated in the original petition. Whatever is alleged in the petition, which upon issue joined requires proof, will, after verdict for the plaintiff, be presumed to have been proved. 1 Chitty’s PL, 673. And the objection that the facts stated'in the petition, and thus presumed to have been proved, are not sufficient to constitute a cause of action, may be made at any time before final judgment in error, if proper notice of such objection appear on the record in the reviewing court, before the case is heard. Youngstown v. Moore, 30 Ohio St., 133. Such notice in the case before us, is apparent in the demurrer to the original petition, the exception taken to the overruling of the same, and the assignment in the district court as error in the record, that the court of commop pleas erred in overruling such demurrer.
In the light of the record before us, the fact that Cone, the defendant in error, was injured through the neglect and *159 want of care and skill of the superintendent and trustees of the cemetery, is not brought in issue. Admitting the truth of the allegations in the original petition, the essential question is, whether the city of Toledo was liable to Cone, for the injuries he received while engaged in the cemetery in improving the vault which was the city’s property, and while working under and obeying the orders of the superintendent — the superintendent and Cone himself having been appointed, and the trustees having been elected, according to the provisions of sections 361 to 376 inclusive, of the act “ To provide for the organization and government of Municipal Corporations,” passed May 7, 1869 (66 Ohio L., 149).
The rule respondeat superior, though well recognized in fixing the liability of private corporations and natural persons, has been a source of much doubt and perplexity in its application to municipal corporations. It is however now well established, that corporations of the latter class, when acting in a certain character or capacity, are liable as superiors and employers, for injuries to third persons resulting from the negligence and unskillfulness of their agents or servants, while in the line of their employment, in the same manner and to the same extent as private corporations or private individuals. Under analogous conditions, there seems to be no foundation in reason or public policy, for exempting such public corporations any more than private individuals, from liability for injuries inflicted on others through the negligence of their agents.
The underlying principle of municipal government is, that the management of local affairs shall be intrusted to local authorities, while general affairs are left to the state legislature. Under the power given by the constitution to the general assembly, to provide for the organization of cities and incorporated villages, these corporations are made the depositaries of certain limited governmental powers, to be exercised on behalf of the state for the public welfare. They are agencies or instrumentalities to which the general assembly, vested with the legislative power of the state, *160 delegates a portion of its governmental power, in ordek to meet those local wants of the people in cities and villages, for which state laws make only general provision, leaving a more particular provision to local councils. The manner and extent, to which legislative and governmental powers delegated to municipal corporations for the public good are to be exercised, must rest, in a large measure, in their judgment and discretion; but, acting as state instrumentalities, they cannot be held liable to individuals for a defect in the execution of such powers, unless a right of action is given by statute. Iudeed, in the distribution of the powers of government — as a part of the machinery of the state government — they enjoy, to a certain extent, an immunity from civil action in the performance of their legislative functions, like that of the sovereign state itself.
This principle is recognized in Wheeler v. The City of Cincinnati, 19 Ohio St., 19, which was an action to recover damages arising from the casual destruction of the plaintiff’s house by fire, through want of an efficient fire department. As an obligation rested upon the state, to aid by appropriate legislation, in the protection of the property of its citizens, it was held in that case, that the powers conferred upon the municipal corporations of the state to establish and organize fire companies, procure engines, etc., to preserve buildings and property within their limits from conflagration, are in their nature legislative and governmental, and that such corporations cannot be held liable to individuals for any defect in the exercise of those powers.
So also in Western College etc. v. The City of Cleveland, 12 Ohio St., 375, it was held, that the defendant was not liable for the failure of its police to preserve the peace and prevent loss by the violence of a mob. It being the duty of the state government to secure to the citizens of the state the peaceful enjoyment of their property and its protection from wrongful and violent acts, power is delegated through the organization of municipal corporations to aid in the accomplishment of that object. But, if municipalities to which such governmental authority might be given *161 should fail to effectively exercise it, they are not to be held responsible to individuals for the consequences. As said by the court, “ it is not the policy of governments to indemnify individuals for losses sustained, either from the want of proper laws or from the inadequate enforcement of laws made to secure the property of individuals.”
But within the sphere of their duties, municipal corporations are to be regarded in another and very different aspect. While they act in a public character or capacity, and exercise public powers, they may and do act also in a private capacity, like private corporations, and as such are held to a like responsibility. Thus, if a municipal corporation acquires real or personal property, and in the discharge of what may be deemed ministerial duties in respect to the same, an individual receives injury through the negligence of its officers or servants, it should be held responsible to that individual. Though not liable for a defect of judgment or discretion, while acting as a. state instrumentality in the exercise of legislative functions,-yet, having like a private corporation or natural person become the owner or obtained the control of property, it should not be relieved from the operation of the general maxim, that one should so use his own as not to injure that which belongs to another. Thus, if a city neglects its ministerial duty to cause its sewers to be kept free from obstructions, to the injury of a person who has an interest in the performance of that duty, it is liable to an action for the damages thereby occasioned. Emery v. Lowell, 104 Mass., 13. So if a city owns a wharf, and has the exclusive control of it, and receives wharfage or- profit for the use thereof, it will be held liable to a private action for an injury suffered by an individual by reason of a defect in the structure. Pittsburgh v. Grier, 22 Penn. St., 54. And the same rule applies in respect to a city’s failure to keep its streets in a safe condition for public use, where this is a duty resting upon it.
Of course, before a municipal corporation is subjected to liability for the misfeasance or neglect of its agents or servants, it becomes material and sometimes' difficult to deter *162 mine whether they are in fact the agents or servants of the corporation. It is said by an approved text writer that if the municipal corporation appoints or elects them, and can control them in the discharge of their duties, can continue or remove them, can hold them responsible for the manner in which they discharge their trust; and if those duties relate to the exercise of corporate powers, and are for the peculiar benefit of the corporation in its local or special interest, they may justly be regarded as its agents or servants, and the corporation will be held responsible for .their acts, within the scope of their employment. And in broad terms, to the same effect, it is laid down in Wood on Master and Servant, sec. 459, that if even an independent public officer, or one whose duties are defined or specified by law, is in any measure subject to the direction or control of a municipal corporation, and acts in obedience to its instructions, the relation of master and servant exists, and the rule of responde,at swj^rior-applies. The rule is predicated upon the right of the ' employer to discharge and control the servant. Blake v. Ferris, 5 N. Y., 48.
Applying these principles to the undisputed facts in this case, we think the cemetery trustees and the superintendent were placed in such relations to the city of Toledo, by the act of May, 1869, under which they were elected, as to make them, the agents of the city, and to render the corporation responsible to Cone for 'the injury he received. At the time he was injured the city owned, held the title to, and the right of possession of the cemetery. The cemetery was in the possession and charge of’ a board of three trustees of cemeteries, -who had the entire management, control and regulation of the same, and who had been elected for that purpose by the qualified electors of the city, at the annual election for corporation officers, in-accordance with the statute in such cases made and provided. All vacancies occurring in- the board were required by the statute to be filled by appointment of the city council, and the council was clothed with power to remove any trustee for inattention to his duties, want of proper judgment, skill or taste *163 for the due discharge of the duties required of him, or for other good cause. The trustees were authorized to appoint, subject to the approval of the council, all necessary superintendents, employees and agents. Under a-superintendent thus appointed Cone was employed, and was required to obey his orders and directions. The trustees were required, when necessary, to institute suits in the name of the corporation for the protection of the cemetery, and to see that all ordinances of the city passed for that purpose were duly enforced, The by-laws and regulations made by the trustees were not to be inconsistent with the ordinances of the corporation; and they were to perform all such other duties, not specified in the statute and pertaining to their office, as the council of the corporation might by ordinance prescribe. While the trustees might appoint one of their number to sell burial lots, notice of such appointment, upon its being made, was to be communicated to the council. All moneys received and disbursed by them as trustees were to be reported quarterly to the council. They were also to report annually in writing to the council, the number of lots sold during the year preceding, with a detailed statement as to receipts, expenditures and investments during the same period, and such other matters as the council might require. And whenever in their judgment an enlargement of the cemetery grounds should become necessary, the trustees were to report the fact to the council for its action in the premises.
We think it is evident from these statutory provisions that the trustees of the cemetery in question were elected by the people of Toledo, to take charge, as their agents, of the cemetery property, and acted in that behalf in subordination to and subject to removal by the council of the cor poration. • The improvement or repair of the city vault, through their agency and that of the superintendent, was not a legislative or governmental act on the part of the city, but was merely the discharge of a ministerial duty, such as the city performs in repairing or improving ijfcs streets, sewers and wharves. It lay within the legislative *164 capacity,' judgment and discretion of the city to provide a cemetery for the burial of the dead, and to build requisite vaults; but, having become the owner of such property, the city in managing it was held to the same degree of care in preventing damage to others as would be required of natural persons. By section 8 of the act of May, 1869, municipal corporations are made capable of acquiring, holding and possessing property, real and personal. Having such power, there would seem to be no more valid reason for exempting them from liability for private injuries caused by the improper management of their property than for exempting private Corporations and natural persons under like circumstances. ; In Hill v. Boston, 122 Mass., 344, the court, in tracing the line of municipal liability, say, that as to common sewers built by municipal corporations under a power conferred: by law, the power of determining where the sewers shall be made involves the exercise of a quasi judicial discretion, and therefore no action lies for defect or want of sufficiency in the plan or system of drainage adopted within the authority so conferred; but, that the duty of constructing the sewers and keeping them in repair is merely ministerial, and therefore for neglect in the con struction or repair of any particular sewer, whereby private property is injured, an action may be maintained against the city. ■
It is true that the election and term of office of the trustees were fixed by a general statute of the state, but the law did not require the city of Toledo to own or maintain the cemetery in question. Having however voluntarily acquired the cemetery, and constructed the city vault as a part thereof, the city acquiesced in the provisions of the statute, and accepted.the trustees and the superintendent by them appointed as its lawful agents for the management and regulation of the property. In. Bailey v. The Mayor etc. of the City of New York, 3 Hill, 531, the action was for injuries occasioned to property by the negligent and unskillful erection of a dain on the Croton river for the purpose of supplying the city with water. The principal ground taken *165 in defense was,, that the defendants were not chargeable for negligence or unskilfulness in the construction of the, dam, inasmuch as the water commissioners, under whose superintendence and control the work.was done, were not appointed by them, nor subject to their direction or control, but.were appointed by the governor of the state, with the advice and consent of the senate, and were answerable for their official conduct to the state alone, which could remove them at pleasure. But the court held that the commissioners, though appointed by the state, were the agents of the corporation, and that the latter was therefore liable; that it being provided by the charter granted to construct the work, that the agents for executing the work should be appointed by the state, an acceptance of the charter by the grantees would render the agents their own. This authority becomes of increased force when it is considered that the cemetery trustees were elected by the qualified electors of Toledo, and were answerable for their official conduct to the city council.
The cemetery and vault were a source of benefit -and advantage to the corporation, and involved the same responsibility for their unsafe and improper management which pecuniary and proprietary interests entail upon natural persons. By an amendment of section 371 of the act of May, 1869 (68 Ohio Laws, 130), the city had authority to charge for burial lots, sufficient not merely to keep in order and embellish the grounds, but also to reimburse the corporation for the cost of lands purchased or appropriated for cemetery purposes. The city vault was used for public purposes, but it was also used by private persons for reward and hire, the money which they paid being accounted for by the trustees, as they accounted for the proceeds of cemetery lots by them sold for the city. The reimbursement of the corporation treasury and the emolument derived from the use of the vault, were for the special local benefit of the corporation, and the state at large had no interest therein. The doctrine seems to be well sustained that where a municipal corporation owns property, and for its own benefit derives pecu *166 niary emolument or advantage therefrom in the same way *a private owner might, it is liable to the same extent as he would be for the negligent management thereof to the injury of others. Oliver v. Worcester, 102 Mass., 489, and eases cited. In Bailey v. The Mayor etc. of the City of New York, supra, the court, in speaking of the grant for the .erection of the water works, say, “ The state, in its sovereign character, has no interest in it. It owns no part of the work. The whole investment under the law, and revenue and profits to be derived therefrom, are a part of the private property of the city, as much so as the lands and houses belonging to it situate within its corporate limits.” This language is not inappropriate to the case at bar. It is suggestive of facts of a kindred nature, which contribute toward fixing upon the plaintiff in error, though a municipal corporation, the same liability which private corporations or natural persons would incur for the neglect of their agents or servants in the care and management of their property.
Upon the facts disclosed by the record, we are of opinion that there was a cause of action in favor of the plaintiff below, and that the judgment entered on the verdict for the plaintiff should not be reversed.

Judgment of the court of common pleas affirmed.