EMILY G. PERRY *vs.* COMMONWEALTH.
ELISE H. READ *vs.* SAME.

Suffolk.   May 18, 1905. — June 21, 1905.

Present: KNOWLTON, C. J., MORTON, BARKER, LORING, & BRALEY, JJ.

*Way*, Highway. *Hancock Avenue.*

The foot walk or passageway eight feet in width at the west of the State House grounds in Boston called Hancock Avenue is not a public street or a private way within the meaning of St. 1892, c. 419, § 25, as amended by St. 1894, c. 443, § 9, restricting the height of buildings in Boston.

PETITIONS, filed June 1, 1900, by the owners of lots numbered respectively 6 and 5 on Hancock Avenue in Boston, for the assessment of damages caused to their property by the passage of St. 1899, c. 457, restricting to seventy feet the height of buildings in a certain territory west of the State House in Boston.

In the Superior Court the parties waived a trial before the auditors theretofore appointed and also waived a trial by jury, and the cases were submitted to *Hardy*, J. upon an agreed statement of facts.

He ruled *pro forma* in accordance with the contention of the petitioners, that at the time of the passage of St. 1899, c. 457, the premises of the petitioners were not subject to the restriction of St. 1892, c. 419, § 25, as amended by St. 1894, c. 443, § 9, that the petitioner Perry accordingly was entitled to recover the sum of $7,000, and that the petitioner Read was entitled to recover the sum of $6,300, in each case with interest at six per cent from June 2, 1899. At the request of the parties, he reported the cases for determination by this court. If the ruling was correct, judgment was to be entered for the petitioners in

the aforesaid sums. If the ruling was not correct, judgment was to be entered for each petitioner in the sum of $2,500, with interest from June 2, 1899, or such other judgment was to be entered as the law required.

St. 1894, c. 443, § 9, is as follows:

" Section 9.   Said chapter four hundred and nineteen is amended by striking out section twenty-five and inserting in place thereof the following new section : — Section 25.   No building or other structure hereafter erected, except a church spire, shall be of a height exceeding two and one half times the width of the widest street on which the building or structure stands, whether such street is a public street or place, or a private way existing at the passage of this act or thereafter approved as provided by law, nor exceeding one hundred and twenty-five feet in any case ; such width to be the width from the face of the building or structure to the line of the street on the other side, or if the street is of uneven width, such width to be the average width of the part of the street opposite the building or structure. If the effective width of the street is increased by an area or set-back the space between the face of the main building and the lawfully established line of the street may be built upon to the height of twenty feet."

A copy of a plan which was annexed to the report is printed on the opposite page.

*C. Warren, G. Perry & J. Codman,* for the petitioner Perry.

*C. C. Read,* for the petitioner Read.

*R. G. Dodge,* Assistant Attorney General, *& F. T. Field,* for the Commonwealth.

BARKER, J.   The question is whether on June 2, 1899, when St. 1899, c. 457, went into effect, limiting the height of buildings in the vicinity of the State House the lots of the petitioners were subject to a restriction under the provisions of St. 1892, c. 419, § 25, as amended by St. 1894, c. 443, § 9, such that no structures exceeding two and one half times the width of Hancock Avenue measured as provided in the last named statute, except church spires, could be erected on the land.   Those provisions so far as is now material are that " no building or other structure hereafter erected, except a church spire, shall be of a height exceeding two and one half times the width of the widest street

on which the building or structure stands, whether such street is a public street or place, or a private way." Each of the lots adjoins the State House grounds, a strip of which eight feet wide

in front of the petitioners' lots, and extending northerly to Mount Vernon Street and southerly to Beacon Street, is surfaced with brick, is used by the occupants of the premises which

abut upon it on the west and by the public as a foot path, is separated from the rest of the State House grounds by a fence, and is known as Hancock Avenue. The respondent contends that Hancock Avenue is a street within the meaning of the provision quoted, and that as the street is the only one on which the lots abut and is but eight feet wide, the height of buildings to be erected on the lots, if built without a setback, is restricted to twenty feet.

When the provision quoted went into effect the State House grounds on the east of the petitioners' lots were open bearing no structures except fences, statues and fountains for a long distance to Mount Vernon Street after its bend to the south to intersect Beacon Street. The south front of the State House was so esteemed that it is impossible to conceive that any Legislature contemplated that the State House grounds in front of the petitioners' lots would not remain always unoccupied with buildings. There are three other similar lots between the lots at the corners of Mount Vernon Place and of Beacon Street. The presence of buildings only twenty feet in height on those five lots, both by their incongruity with their surroundings and by leaving unmasked the rear of buildings on Beacon and Joy Streets and Mount Vernon Place, would detract much from the beauty of the outlook from the State House and its main approach, and would disfigure that section of Boston. At the same time such a restriction as is contended for by the respondent would be absurd in its relation to the general purposes of the legislation of which the provision in question is a part. The Legislatures of 1892 and 1894 therefore cannot have had any actual intention to restrict to twenty feet the height of buildings to be erected on the lots in question. Nor do we think that construction should be given to the language used, when applied to the strip of ground known as Hancock Avenue.

It is not every strip of land over which certain individuals and the public have a right to travel, even if the strip is laid out for travel and wrought and kept in repair by public officials, that in any sense fairly can be called a street, even if the strip serves as a means of communication between public highways. *Oliver* v. *Worcester,* 102 Mass. 489. *Sullivan* v. *Boston,* 126 Mass. 540. *Clark* v. *Waltham,* 128 Mass. 567. *Steele* v. *Boston,* 128 Mass.

583.    *Veale* v. *Boston*, 135 Mass. 187.    *Lincoln* v. *Boston*, 148 Mass. 578, 580.    Looking at the history of Hancock Avenue we think it is merely a part of the State House grounds over which certain individuals by virtue of their relations to lots abutting on the avenue, and the public, have the privilege ordinarily of passing, on foot, and that the avenue is not a street within the meaning of St. 1892, c. 419, § 25, as amended by St. 1894, c. 443, § 9.

The principal circumstances are these.    The State House grounds as conveyed to the Commonwealth in 1795 were bounded north and east by Mount Vernon Street, at one time called Sumner Street, on the south by Beacon Street and on the west by Governor Hancock's garden.    In 1824 the garden having passed into other ownership the Legislature appointed a joint committee to confer with the proprietors of the lands adjoining the State House yard on the westerly side and to arrange a plan with them that their buildings should be so placed as not to injure the beauty or value of the public lands.    This committee reported a resolve which became Res. 1824, c. 20, authorizing the appointment of commissioners with power to negotiate with the proprietors relative to the manner in which their buildings should be erected, and relative to the straightening of the line of the westerly boundary of the State House yard with power to exchange lands " and with full power and authority to lay out and establish a convenient sidewalk on the Commonwealth's lands for the accommodation of said proprietors, on such terms, and under such restrictions as they shall think will preserve the beauty of the public lands, and secure the interest of the Commonwealth."    The doings of the commissioners were to be binding when approved by the Governor with the assent of the Council.

The resolve did not authorize the commissioners to lay out a way for the use of the public, but only to " lay out and establish a convenient sidewalk on the Commonwealth's lands for the accommodation of said proprietors."    The commissioners did not themselves lay out or establish any sidewalk.    Their report shows that they agreed with the proprietors that the latter should " at their own expense lay out and entirely finish a foot walk or passageway of eight feet in width on the extreme west

land of the State House yard." The same agreement contained many other terms, among which was one requiring the proprietors to erect an iron fence like that at the east end of the State House yard, with a double iron gate on the east side of the foot way opposite the west door of the State House. The term looking to the use of the way by the public is this : " which foot way shall at all times forever hereafter be free for the use of the proprietors and occupants of the aforesaid lands adjoining the west end of the State House yard, and to the citizens of the Commonwealth at large when not interdicted by the Governor and Council or Legislature on special occasions, the right to do which together with the fee of said passageway is hereby expressly reserved, and also the right hereafter to make such alterations in said foot way as the public accommodation may require."

Another term is that the proprietors never shall permit a building to be erected " contageous [contiguous] to said yard or avenue, that shall by the Governor and Council be adjudged a nuisance to the State House from offensive smell or noise ; who upon due notice to said proprietors or occupants of said land after satisfactory investigation, shall have full right and authority to decide thereon, and to suspend the use of said foot walk and avenue, by an order, till such time as such nuisance shall be removed."

We do not think it was the intention of the Legislature by the Resolve of 1824 to allow the commission to lay out and establish a way in any such sense as is ordinarily meant by the use of that phrase. That would be to give to the municipal authorities of Boston jurisdiction over a portion of the State House grounds, which we think never could have been intended. Nor did the commissioners attempt to lay out and establish a way in any such sense. They merely authorized the proprietors to grade, work and cover the walk by the side of the State House grounds, and agreed with them that the proprietors and the public, ordinarily, when not forbidden as they might be on special occasions, might use that part of the State House grounds for foot travel. If the commission had power to establish a way in the sense contended for by the respondent, it could not delegate that power to the proprietors, and it did not itself exercise it. The stipulation

that the use of the walk might be interdicted on special occasions or if the Governor and Council adjudged that there was a nuisance upon the land of the proprietors is inconsistent with the contention that it was meant by the Legislature or the commission to lay out and establish a way in the ordinary sense.

The provision for a fence does not militate against our construction. Such a fence was necessary to make the yard symmetrical, and also like the similar fence on each side of the central walk leading from Beacon Street through the grounds to the south entrance of the State House to preserve the beauty of the grounds. For these reasons we think Hancock Avenue is not a street within the meaning of St. 1892, c. 419, § 25, as amended by St. 1894, c. 443, § 9.

The petitioners' lands not being under a restriction against the erection of buildings of a greater height than two and one half times the width of Hancock Avenue, each petitioner is entitled to judgment in the larger sum fixed by the report.

*So ordered.*