Wallace vs. The City of Menasha.

WALLACE vs. THE CITY OF MENASHA.

*December 17, 1879 — January 7, 1880.*

CITIES. *Liability for act of treasurer in selling chattels for delinquent taxes.*

1. A city is not liable in tort for the act of its treasurer, acting in good faith in the execution of his tax warrant, in seizing and selling the chattels of one person for the delinquent taxes of another.
2. Whether an action will lie against the city, as for money had and received, to recover the proceeds of the sale of such property, paid into the treasury, or any part thereof, not considered.

APPEAL from the Circuit Court for *Winnebago* County.

Action to recover damages for the alleged unlawful conversion by the defendant city of certain personal property of the plaintiff.

The facts, as they appear from the pleadings, evidence and findings of the judge, are briefly as follows: The annual tax list of the city of Menasha for 1875 was duly made. The proper warrant to the treasurer to collect the taxes assessed

therein, signed by the mayor and clerk, and sealed with the city seal, was appended thereto, and the same was delivered to the city treasurer. Such tax list included state, county, school and city taxes to be collected for that year in the city of Menasha. A tax of $70.50 was therein assessed against the firm of Kelley & Co. That firm neglected or refused to pay such tax; whereupon the treasurer seized and sold the prop-erty described in the complaint, and from the proceeds of the sale satisfied the tax against Kelley & Co. The property be-longed to the plaintiff, and was of the value of $300.

On these facts the court held that the plaintiff was entitled to judgment against the city for the value of the property, with interest and costs. From the judgment rendered against it pursuant to this determination, the city appealed.

The cause was submitted on the brief of *E. Mariner* and *C. A. Hamilton* for the appellant, and that of *C. W. Felker* for the respondent.

For the appellant it was argued, 1. That the levy and col-lection of taxes by the defendant city is not a corporate act from which it derives special benefit, but is simply the exer-cise of a public governmental power delegated to it by the state; and for negligence in the exercise of that power defend-ant is not liable. Cooley's Con. Lim., 517–519; *Knowlton v. Supervisors*, 9 Wis., 388; *Hart v. Bridgeport*, 13 Blatchf., 291; *Bailey v. Mayor*, 3 Hill, 539. 2. That the city treasurer is an independent public official, over whose action in the col-lection of a tax defendant had no control, beyond signing and sealing the warrant issued in the name of the state; that after receiving such warrant the treasurer acted as an officer of the state, under its mandate and not under that of the defendant; and that for this reason defendant is not liable in an action of tort for the treasurer's misfeasance. City charter (Laws of 1874, ch. 127), subch. IV, sec. 6; *Cook v. City of Macon*, 54 Ga., 468; *Williams v. Village of Dunkirk*, 3 Lans., 50; *Lorillard v. Town of Monroe*, 11 N. Y., 392; *Bank of Common-*

*wealth v. The Mayor*, 43 id., 189; *Hayes v. Oshkosh*, 33 Wis., 318; *Fisher v. Boston*, 104 Mass., 87. ' 3. That even if the treasurer was defendant's agent, defendant is not liable for his willful trespass. *Boom v. Utica*, 2 Barb., 104; *Sherman v. City of Grenada*, 51 Miss., 187; *Williams v. Village of Dunkirk, supra; Lynes v. Martin*, 8 Ad. & El., 512. 4. That a municipal corporation cannot be made liable by ratification for an act of its agent which it did not possess the power to authorize the agent to perform. *Boom v. Utica, supra; Hodges v. Buffalo*, 2 Denio, 113. And in any case a ratification by a municipal corporation must be positively shown, and cannot be presumed. *Sherman v. City of Grenada, supra; Mayor, etc., v. Reynolds*, 20 Md., 14.

For the respondent it was argued, that the city is not exempted from liability by the fact that the warrant ran in the name of the state. An execution in justice's court runs in the name of the state, but the party directing its issue and an illegal levy is nevertheless liable. Nor is defendant's liability affected by the fact that the warrant did not direct a levy on this property. The act of the treasurer was within his general authority as an officer; and there is nothing to show that he did not act in good faith, "with an honest view to obtain for the public a lawful benefit," or to take the case out of the rule of *Hamilton v. Fond du Lac*, 40 Wis., 47; *Hurley v. Texas*, 20 id., 634; *Squiers v. Neenah*, 24 id., 588. The rule is well established in other states. *Thayer v. Boston*, 19 Pick., 511; *Howell v. Buffalo*, 15 N. Y., 512–20; *Conrad v. Ithaca*, 16 id., 158; *Weet v. Brockport*, id., 161–71; *Lee v. Sandy Hill*, 40 id., 442; *B. & H. Turnpike Co. v. Buffalo*, 58 id., 639; *Allen v. Decatur*, 23 Ill., 272; *McCombs v. Council*, 15 Ohio, 474; *Sheldon v. Kalamazoo*, 24 Mich., 383; *Wild v. New Orleans*, 12 La. An., 15; Dillon on M. C., § 770; Addison on Torts, D. & B.'s ed., 1300. Moreover the city never returned the money, and, in some of the defenses set up in the answer, it alleges that the property was subject to the sale; and it must

be held to have thus *ratified* the act. *Hamilton v. Fond du Lac, supra;* Dillon, §§ 69, 70.

LYON, J.  Doubtless it has very frequently happened that municipal officers charged by law with the duty of collecting the public revenue have, for nonpayment of taxes, seized property belonging to persons not liable to pay such taxes. Many cases of tort, brought against such officers by the owners of property so seized, to recover damages therefor, are probably reported in the books; but we have been referred to no case, and upon most diligent search have been unable to find one, in which an action of tort for such unlawful seizure has been sustained or even commenced against a municipal corporation.

The absence of such cases raises a very strong presumption that the bar everywhere entertain the view that such actions cannot be maintained.  This circumstance is not, however, conclusive of the question; for if a case like this comes clearly within the established doctrine of *respondeat superior,* the action must be upheld, notwithstanding the absence of cases directly in point.

To determine, therefore, whether this action can be maintained, resort must necessarily be had to the general principles of law relating to the liability of municipal corporations for the torts of their officers or agents.

That actions sounding in tort will lie in certain cases against municipal corporations, though formerly doubted, is now perfectly well settled.  It is to be determined whether this is one of those cases.

The rules of law by which the question of the liability of the city of Menasha, in an action of tort for the unlawful seizure by its treasurer of the property of the plaintiff, is to be determined, are thus stated by Chief Justice SHAW in *Thayer v. The City of Boston,* 19 Pick., 511: "There is a large class of cases in which the rights of both the public and

of individuals may be deeply involved, in which it cannot be known, at the time the act is done, whether it is lawful or not. The event of a legal inquiry, in a court of justice, may show that it was unlawful; still, if it was not known and under-stood to be unlawful at the time; if it was an act done by the officers having competent authority, either by express vote of the city government or by the nature of the duties and functions with which they are charged by their offices, to act upon the general subject matter; and especially if the act was done with an honest view to obtain for the public some lawful benefit or advantage,— reason and justice obviously require that the city, in its corporate capacity, should be liable to make good the damage sustained by an individual in consequence of the acts thus done. . . .

" The court is therefore of opinion that the city of Boston may be liable in an action on the case, where acts are done by its authority which would warrant a like action against an individual, provided such act is done by the authority and order of the city government, or of those branches of the city government invested with jurisdiction to act for the cor-poration upon the subject to which the particular act relates, or where, after the act has been done, it has been ratified by the corporation, by any similar act of its officers. . . . . As a general rule, the corporation is not responsible for the unauthorized and unlawful acts of its officers, though done *colore officii*. It must further appear that they were expressly authorized to do the acts by the city government, or that they were done *bona fide* in pursuance of a general authority to act for the city on the subject to which they relate; or that, in either case, the act was adopted and ratified by the corpo-ration."

There is no pretense in the present case that the city of Menasha has ratified the unlawful act of its treasurer. True, the money realized on the sale of the plaintiff's property was paid into the city treasury in satisfaction of the tax assessed

against Kelley & Co.; but it does not appear that the city council, or any officer of the city other than the treasurer, had notice of the source from which the money was derived, or did any act sanctioning or approving the seizure of the plaintiff's property.

Unlike the case of *Hurley v. Texas*, 20 Wis., 634, in which the levy was void, the taxes were lawfully assessed, and the warrant for the collection thereof lawfully issued to the treasurer by the mayor and city clerk under the seal of the city. The warrant commanded the treasurer, in case Kelley & Co. neglected or refused to pay the taxes assessed against them, to collect the same by distress and sale of *their* goods and chattels. It does not purport to give him authority to make such taxes out of the goods and chattels of the plaintiff or any person other than that firm. It was known and understood, when the plaintiff's goods were seized, that if they belonged to the plaintiff the seizure was unlawful. The treasurer had no authority, real or apparent, to make the seizure, and although he made it *colore officii*, and in the honest belief that the goods belonged to Kelley & Co., it cannot correctly be said that he had general authority to act for the city in that behalf. The treasurer had specific authority in a certain contingency to seize the goods of Kelley & Co., but he had no more authority to seize the goods of the plaintiff for the delinquent taxes of others, than he had to commit an assault and battery on a person taxed to compel him to pay his taxes. And, indeed, if the city is liable in the one case, it is not perceived why, on the same principle, it would not be liable in the other. Should the treasurer assault a tax debtor and take from his pocket by force the amount of his tax, it would hardly be claimed that the city is liable in tort for such unlawful and criminal acts.

The case of *Squiers v. Neenah*, 24 Wis., 588, cited and relied upon by counsel for the plaintiff, is distinguishable from the present case. The board of trustees of the village of

Neenah attempted to lay a street through plaintiff's land, but, because of a defect in the village charter, no street was lawfully laid out. Believing, however, that it was lawfully established, the board ordered the street commissioners to open the street, and one of them opened it by removing the plaintiff's fences, against his protest. The action was trespass against the village to recover damages for the act of the street commissioner, and the plaintiff recovered. The unlawful act complained of was expressly directed by that branch of the village government invested by law with jurisdiction to act for the corporation in the matters of laying out and opening streets; and hence the case was clearly within the rule of municipal liability laid down in *Thayer v. Boston, supra.* That case is referred to and approved in the opinion by DIXON, C. J.; also in *Hurley v. Texas, supra,* and in *Hamilton v. Fond du Lac,* 40 Wis., 47. In the two cases last cited, as in *Squiers v. Neenah,* the unlawful acts complained of were done pursuant to express orders of the respective city councils.

Did the charter of Menasha authorize the city council to control and direct its treasurer specifically in the matter of collection of taxes, and had the council directed him to seize, or after seizure had it directed him to sell, the property of the plaintiff to satisfy the taxes of Kelley & Co., we should have a case more nearly resembling those above cited.

We have thus far considered the case upon the hypothesis that the treasurer is the agent or servant of the city, for whose torts the city may, in a proper case, be held liable. But, under the authorities, it may well be doubted whether the rule *respondeat superior* has any application to acts performed or torts committed by him in the collection of taxes. The levy and collection of taxes are governmental rather than municipal functions, delegated, it is true, to municipal officers for convenience, but still governmental. It may well be claimed that, in the exercise of those functions, such officers are public officers, discharging public and not municipal or

corporate duties. If so, there seems to be no ground for holding the municipality liable for their torts committed in the exercise of those functions — no room for the application of the rule *respondeat superior* in such cases. A distinction is made in many well considered cases between torts committed by municipal officers or agents in the discharge of such public duties, and those committed in the discharge of purely municipal or corporate duties by the officers or agents of the city or village; the municipality being held liable for the latter, but not liable for the former class of torts. In addition to the cases and authorities cited in the brief of counsel for the city, see 2 Dillon on Munic. Corp., §§ 464 to 770, inclusive, and cases cited; *Bailey v. Mayor, etc., of N. Y.*, 3 Hill, 531; *Oliver v. Worcester*, 102 Mass., 489. This distinction was recognized in *Hayes v. Oshkosh*, 33 Wis., 318, and controlled the judgment of the court.

We conclude that the city is not liable in this action for the tort of the treasurer. Whether the plaintiff can maintain an action, as for money had and received, to recover of the city the proceeds of the sale of his property, paid into the city treasury, or any part thereof, we do not determine.

*By the Court.* — Judgment reversed, and cause remanded with direction to the circuit court to render judgment for the defendant.

