## NAUMBURG v. CITY OF MILWAUKEE.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1906. Rehearing Denied June 18, 1906.)

No. 1,161.

MUNICIPAL CORPORATIONS—NEGLIGENCE OF SERVANTS—INJURIES TO THIRD PERSON—CORPORATE OR GOVERNMENTAL ACTS.

Milwaukee City Charter, c. 9, § 6, provides for the maintenance of certain drawbridges at the expense of the city; and section 5 requires the board of public works to appoint, subject to the approval of the common council, all bridge tenders, whose compensation shall be fixed by the common council, and who may be removed at the pleasure of the board of public works or the mayor. Chapter 2, § 1, declares that the officers of the city shall be a mayor * * * and as many bridge tenders, firemen, policemen, etc., as may be provided by the act or the common council may from time to time direct; and chapter 15, § 4, provides that the mayor and aldermen and harbor master and bridge tenders of the city shall severally exercise within the city all the powers of policemen, etc. *Held*, that where the tender of a drawbridge maintained by the city was guilty of negligence in the operation of the bridge, causing injuries to plaintiff, his act was an act of the city in its corporate, and not its governmental, capacity, for which the city was therefore responsible.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1569–1576.

Liabilities of municipal corporations for torts of public officers, see note to Mayor, etc., of New York v. Workman, 14 C. C. A. 534.]

Baker, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

The plaintiff in error filed his complaint in the Circuit Court of the United States for the Eastern District of Wisconsin, alleging in substance that he was a citizen of the state of New Jersey, and that the defendant was a municipal corporation having applied for and received its charter from the Legislature of Wisconsin; that within its limits the municipality maintained a certain draw, jackknife, or bascule bridge known as the "Grand Avenue Bridge," over the Milwaukee river; that said bridge is and was built and operated so as to allow the passage of boats and vessels along said river; that said bridge is and was divided in the center, so as to have two parts, each of which parts was attached to the abutments at either end of said bridge; that at the points where said parts were attached there were certain mechanical devices and arrangements for raising the parts of the bridge

146 F.—41

from the center; that said bridge was worked by electricity and was controlled and operated by men employed by and under the direction of the city, known as bridge tenders, all in accordance with the city charter; that defendant had not supplied any guards or warnings at said bridge, but left the approaches unguarded and unsafe; that said bridge was used and provided for the convenience of persons traveling the streets, and at the time of the acts complained of the said bridge and the streets leading thereto were crowded with people going to and from and upon said bridge and streets; that plaintiff was a traveling salesman in the employ of a New York firm, and about 7 o'clock p. m. on September 1, 1903, was traveling along said Grand avenue and approached the bridge for the purpose of crossing over it; that no warning of danger was given to plaintiff by the bridge tender, and no guard or device was put up to warn or caution him of any danger in crossing the bridge; that when he approached the bridge the bridge tender said to plaintiff. "Come on, you have plenty of time to cross," and while he was attempting to cross, the bridge tender raised the bridge and threw plaintiff off, from which he received the injuries complained of; that said injuries were caused by the negligence of the bridge tender, and without any fault on the part of plaintiff. To this complaint the city filed its demurrer for the want of sufficient facts. The demurrer was sustained, and judgment was rendered for the defendant.

The provisions of the city charter which bear upon the question here are as follows: Chapter 9, § 6: "Draw or swing bridges, with openings sufficient for the passage of vessels, shall be maintained and supported at the expense of the city, at the following places in said city, to-wit [among other places]: From Wisconsin street, in the Third and Seventh Wards, to Grand avenue in the Fourth Ward [the bridge in question]." Chapter 9, § 5: "The board of public works shall appoint, subject to the approval of the common council, all bridge tenders, whose number, duties and compensation shall be fixed and determined by the common council. Any bridge tender may be removed at pleasure by the board of public works, or by the mayor." Chapter 2, § 1: "The officers of said city shall be a mayor * * * and as many bridge tenders, firemen, constables, policemen, and such other officers and agents as may be provided by this act, or as the common council may from time to time direct." Chapter 15, § 4: "The mayor and aldermen and the harbor master and bridge tenders of the city * * * shall severally and respectively have and exercise within said city, all the powers of policemen of said city, without any compensation or claim to compensation therefor."

Charles Friend and A. D. Friend, for plaintiff in error.

Thomas H. Dorr, for defendant in error.

Before GROSSCUP and BAKER, Circuit Judges, and ANDERSON, District Judge.

After stating the facts, as above, the opinion of the court was delivered by ANDERSON, District Judge.

The cause of action set forth in the complaint is based upon the negligence of the bridge tender in opening the draw or lift of the bridge, when plaintiff was crossing, whereby the plaintiff was injured, while exercising due care. The sufficiency of the complaint turns upon the question whether the bridge tender was such an agent or servant of the municipality as that the latter is liable for his negligence—whether the doctrine of respondeat superior applies. The Circuit Court held that the question was one of local law, that under the decisions of the Supreme Court of Wisconsin the opening of the draw was a public or governmetal service, and that the doctrine of respondeat superior did not apply.

It is well settled that municipal corporations have a dual character. They are governmental instrumentalities, endowed with powers and duties necessary for the establishment and maintenance of good government within their territory. In the exercise of these powers and discharge of these duties they are political divisions of the state, employed by it as a means through which it may perform the duties that it owes to all citizens alike. But they are more than mere governmental instrumentalities. "They are incorporated at the wish and special instance of the inhabitants for the advancement of their own private interests," and "extensive powers and privileges, which are to be exercised for the improvement of the territory within their limits and for its adaptation to the purposes of business and residence, are conferred upon them." While acting in their capacity as governmental instrumentalities they are, like the sovereign power itself, exempt from liability for acts done or omitted, unless such liability is expressly created by statute. On the other hand, when they are acting, not in their public or governmental capacity, but in their municipal or corporate capacity, exercising powers and privileges given them for their own corporate benefit, they are held liable for their acts and omissions in exercising these powers. Williams, Municipal Liability for Tort, §§ 4, 5, et seq., and authorities cited.

The Supreme Court of Wisconsin has repeatedly recognized and declared this doctrine, with its distinctions. In Hayes v. Oshkosh, 33 Wis. 314, 14 Am. Rep. 760, it was held that a municipality is not liable for the misconduct of its officers or employés when "the corporation is engaged in the performance of a public service, in which it has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law for the general welfare of the inhabitants or of the community." The defendant city was accordingly held not liable for the negligence of the fire department. In Folk v. Milwaukee, 108 Wis. 359, 84 N. W. 420, it was held that the city was not liable for the death of a child lawfully attending one of its public schools, when such death was caused by negligently allowing the sewer of the school building to become clogged up; and the court there said:

"This court early adopted and has consistently maintained the rule that a municipal corporation is not liable for injuries resulting from the acts or defaults of its officers when it is engaged in the performance of a merely public service, from which it derives no benefit in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law for the general welfare of the inhabitants, or the community"—citing Hayes v. Oshkosh, supra.

This phase of the rule is illustrated in many other Wisconsin cases. Schultz v. Milwaukee, 49 Wis. 254, 5 N. W. 342, 35 Am. Rep. 779, and Little v. Madison, 49 Wis. 605, 6 N. W. 249, 35 Am. Rep. 793, are illustrations of the doctrine of nonliability in respect to the acts or omissions of police officers. In Kuehn v. Milwaukee, 92 Wis. 263, 65 N. W. 1030, the doctrine was applied to the acts of the board of public works in disposing of the city's garbage; and in Manske v. Milwaukee (Wis.) 101 N. W. 377, it was applied to a

case where a person was injured by the negligence of a fireman in loading coal for the fire department. In each of these cases it was held that the municipality was not liable because it was engaged in a public service—was acting in its governmental, and not in its corporate, capacity.

On the other hand, the Supreme Court of that state has held that a municipal corporation is liable for the acts and omissions of its officers and employés engaged in the performance of duties that pertain to the corporate rights and powers of the municipality. In Wallace v. Menasha, 48 Wis. 79, 4 N. W. 101, 33 Am. Rep. 804, it was ruled that the city was not liable for the acts of its treasurer in seizing and selling the property of one person for the taxes of another, and in the course of its opinion the court said:

"We have thus far considered the case upon the hypothesis that the treasurer is the agent or servant of the city, for whose torts the city may, in a proper case, be held liable. But, under the authorities, it may well be doubted whether the rule respondeat superior has any application to acts performed or torts committed by him in the collection of taxes. The levy and collection of taxes are governmental rather than municipal functions, delegated, it is true, to municipal officers for convenience, but still governmental. It may well be claimed that, in the exercise of those functions, such officers are public officers, discharging public and not municipal or corporate duties. If so, there seems to be no ground for holding the municipality liable for their torts committed in the exercise of those functions—no room for the application of the rule respondeat superior in such cases. A distinction is made in many well-considered cases between torts committed by municipal officers or agents in the discharge of such public duties, and those committed in the discharge of purely municipal or corporate duties by the officers or agents of the city or village; the municipality being held liable for the latter, but not liable for the former class of torts. In addition to the cases and authorities cited in the brief of counsel for the city, see 2 Dillon on Munic. Corp. §§ 464–470, inclusive, and cases cited; Bailey v. Mayor, etc., of N. Y., 3 Hill (N. Y.) 531, 38 Am. Dec. 669; Oliver v. Worcester, 102 Mass. 489, 3 Am. Rep. 485. This distinction was recognized in Hayes v. Oshkosh, 33 Wis. 318, 14 Am. Rep. 760, and controlled the judgment of the court."

In Durkee v. Kenosha, 59 Wis. 123, 17 N. W. 677, 48 Am. Rep. 480, the city was held liable for the acts of its officers in seizing and selling property to pay a void special assessment for benefits from the opening of a street; and the court said:

"The laying out and opening of streets in a city, the assessment of damages and benefits resulting therefrom, and the collection of the sums so assessed as benefits, are strictly municipal functions, and the officers of the city by whom those functions are performed thereby discharge municipal or corporate duties, as distinguished from public or governmental duties. Hence this case is not within the rule established in Hayes v. Oshkosh, 33 Wis. 314, 14 Am. Rep. 760; Schultz v. Milwaukee, 49 Wis. 254, 5 N. W. 342, 35 Am. Rep. 779, and Little v. Madison, 49 Wis. 605, 6 N. W. 249, 35 Am. Rep. 793, which relieves the municipality from liability for torts committed by its officers in the discharge of merely public or governmental duties. Neither is the case within the rule of Wallace v. Menasha, 48 Wis. 79, 4 N. W. 101, 33 Am. Rep. 804, nor within the application of the rule of the cases above cited, suggested in the doubt expressed in the opinion. The rule of Wallace v. Menasha is that if the collecting officer seize the property of A. for nonpayment of a tax assessed against B., and which the city authorities have directed him to collect of B., the city is not liable to A. in an action of

tort for such unlawful seizure of his property. The judgment went upon the grounds that the city had not authorized or directed its officer to make the seizure complained of and that he acted without any authority, real or apparent. In the present case the officer seized the property of the plaintiff in strict obedience to the mandate of the city council. The doubt expressed in Wallace v. Menasha is upon the question whether the rule of the cases first above cited is not also applicable to torts committed by the treasurer in the collection of taxes—whether the rule respondeat superior has any application in such a case. This point was not decided, and perhaps the suggestion of it might better have been omitted from the opinion, inasmuch as it did not aid in the determination of the case. However that may be, we were then speaking of the general taxes levied for the support of the government under authority of the government, and not of a mere local assessment for a municipal improvement in which the general public has no direct concern. The distinction between the two cases is obvious and substantial."

In Nicolai v. Town of Vernon et al., 88 Wis. 551, 60 N. W. 999, the distinction between the two classes of cases was declared and enforced in the case of a town. This was an action to restrain the defendants, the town, and the supervisors and path master of the town, from removing plaintiff's fences and taking a strip of his land for highway purposes. The town demurred to the complaint and its demurrer was sustained. The Supreme Court reversed the ruling of the lower court, holding that the act complained of was an "attempted discharge of a municipal or corporate duty, as distinguished from a public or governmental duty," and said:

"In such cases the municipality is liable if the acts of its officers prove to be unlawful."

It seems therefore to be settled in Wisconsin that if the city of Milwaukee, in the control and management of the bridge in question in this case, was performing a public service, acting in its public or governmental capacity, there is no liability; but it seems to be equally well settled that, if in such control and management it was acting in its municipal or corporate capacity, there is liability. The question, then, comes to this: In which capacity did the city maintain, support, and (through its bridge tender) attend this bridge? In so doing was it performing a governmental or municipal act? So far as our researches have gone this point has not been expressly ruled by the Wisconsin Supreme Court.

The case of Weisenberg v. Winneconne, 56 Wis. 667, 14 N. W. 871, has been called to our attention. The court in that case said:

"These are two writs of error in the same case, in the first of which the demurrer to the complaint was sustained, and in the second it was overruled. The complaint substantially charges that the deceased came to his death while navigating the Wolf river, in this state, with a vessel called the 'North Star,' of which he was part owner, by reason of the acts of malfeasance and misfeasance of the defendants in placing a bridge across said Wolf river, a navigable stream within said town and village, which obstructed the navigation thereof unless a certain draw therein had been opened, and that by the negligence of the officers, agents, and employés of said defendants such draw was not opened. In short, the complaint charges that the defendants obstructed said river and neglected to remove such obstruction, by reason whereof the deceased, while navigating the same, was killed. This would appear to be a straight common-law action, as well as warranted by section

1598, Rev. St. 1898. The defendant town became responsible for this obstruction by the purchase of the bridge, by virtue of chapter 216, p. 424, Priv. & Loc. Laws 1859, which required the town to keep such bridge in repair 'and attended.' The only right which either the town or village had to maintain this bridge by the law, or could have, was conditional that a draw should be constructed in the same and opened when the river at this point should be required for the navigation of boats and vessels, and the town clearly assumed the duty to so attend and manage such draw. When this duty was neglected, then the bridge became and was a complete obstruction to the navigation of the river, and the town was responsible therefor, and for all special damage occasioned thereby. The complaint alleges that the town did maintain and control this bridge when the accident occurred. It is not claimed that this special power, right, and duty imposed upon this town by the statute to maintain and attend this bridge were ultra vires, and the state clearly had the right to grant and the town had the right to assume such power, right, and duty; and, this being so, the town is liable for neglect of such special duty, as any corporation or individual would be under the same circumstances. Dillon on Munic. Corp. § 763. * * * There is certainly enough in this complaint to charge both defendants with the responsibility of maintaining this bridge and attending its draw, and their officers, agents, and employés with negligence in not opening the draw of the bridge, or otherwise removing the obstruction to the navigation, on due and proper notice and signal given by the deceased, and that by reason of such obstruction and negligence the deceased came to his death; and that is sufficient. There are no close or complicated questions of law in the case, and the liability of the defendants rests upon the plainest of elementary principles."

In the course of its opinion the court further said:

"The only highway in question in this case is this navigable river, and the liability of towns in respect to roads and bridges is not involved; for the deceased was not seeking to use the bridge for the purpose of travel, and it is complained of only as an obstruction to the navigation of the river as a common highway which he had the right to navigate and use without unnecessary obstruction."

The negligence charged was the negligence of the officers, agents, and employés of the town in not opening the draw. The town was held liable for neglect of this duty "as any corporation or individual would be under the same circumstances." The question whether the duty of the "officers, agents, and employés" of the town, to attend the bridge, was a public or governmental, or a municipal or corporate, duty, seems not to have been raised, but it is not easy to see how "the liability of the defendants rests upon the plainest of elementary principles" or how the town could be held liable "as any other corporation or individual would be," unless, in the light of the cases heretofore referred to, the duty to attend the bridge and open the draw was considered a corporate and not a governmental duty.

One of two propositions would seem to be clear: Either the Weisenberg Case holds that the maintenance and attendance of the bridge in that case was a corporate, and not a governmental, duty, or the question has not been decided by the Supreme Court of Wisconsin. In the latter event the question is one of general law. The rule by which this question is to be decided has been clearly stated in Maxmilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468, in which Judge Folger, speaking for the court, said:

"There are two kinds of duties which are imposed upon a municipal corporation: One is of that kind which arises from the grant of a special power. in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private and is used for private purposes; the latter is public and is used for public purposes. Lloyd v. Mayor, 5 N. Y. 374, 55 Am. Dec. 347. The former is not held by the municipality as one of the political divisions of the state; the latter is. In the exercise of the former power, and under the duty to the public which the acceptance and use of the power involves, a municipality is like a private corporation, and is liable for a failure to use its power well, or for an injury caused by using it badly. But where the power is intrusted to it as one of the political divisions of the state, and is conferred not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens. the corporation is not liable for nonuser, nor for misuser by the public agents. Eastman v. Meredith, 36 N. H. 284, 72 Am. Dec. 302."

And after full discussion he continues:

"This becomes the practical question: Are the acts, which are to be done by the commissioners of charities and correction, acts to be done by them in their capacity as public officers in the discharge of duties imposed upon them by the Legislature for the public benefit, or are they acts done for the defendant, in what might be called its private character, in the management of property or rights voluntarily held by it for its own immediate profit or advantage as a corporation, though inuring ultimately to the benefit of the public? Oliver v. Worcester, 102 Mass. 489, 3 Am. Rep. 485."

In Oliver v. Worcester, 102 Mass. 489. 499, 500, 3 Am. Rep. 485, cited in Maxmilian v. Mayor, supra, the court said:

"The distinction is well established between the responsibilities of towns and cities for acts done in their public capacity, in the discharge of duties imposed upon them by the Legislature for the public benefit, and for acts done in what may be called their private character. in the management of property or rights voluntarily held by them for their own immediate profit or advantage as a corporation, although inuring, of course, ultimately to the benefit of the public. To render municipal corporations liable to private actions for omission or neglect to perform a corporate duty imposed by general law on all towns and cities alike, and from the performance of which they derive no compensation or benefit in their corporate capacity, an express statute is doubtless necessary. * * * But this rule does not exempt towns and cities from the liability to which other corporations are subject for negligence in managing or dealing with property or rights held by them for their own advantage or emolument. Thus, where a special charter. accepted by a city or town or granted at its request, requires it to construct public works, and enables it to assess the expense thereof upon those immediately benefited thereby, or to derive benefit in its own corporate capacity from the use thereof, by way of tolls or otherwise, the city or town is liable, as any other corporation would be, for any injury done to any person in the negligent use of the powers so conferred. Henley v. Lyme, 5 Bing. 91, s. c. 3 B. & Ad. 77; 1 Scott, 29; 1 Bing. N. C. 222; 2 Cl. & Fin. 331; 8 Bligh (N. S.) 690; Weet v. Brockport, 16 N. Y. 161, note; Weightman v. Washington, 1 Black, 39, 17 L. Ed. 52; Nebraska City v. Campbell, 2 Black, 590, 17 L. Ed. 271; Perley, C. J., in Eastman v. Meredith, 36 N. H. 289–294. 72 Am. Dec. 302; Metcalf, J., in Bigelow v. Randolph, 14 Gray (Mass.) 543; Child v. Boston, 4 Allen (Mass.) 41, 51, 81 Am. Dec. 680."

The city of Milwaukee is by its charter required to maintain, support and provide bridge tenders for the bridge in question. The bridge tender's duties and compensation are "fixed and determined by the common council" and "any bridge tender may be removed at

pleasure by the board of public works or by the mayor." The bridge is maintained, supported, and attended at the expense of the city. The city derives benefit in its own corporate capacity from the use of the bridge, not by way of tolls, to be sure, but otherwise; for example, in "the improvement of the territory within its limits," and in "its adaption to the purposes of business and residence." The bridge is maintained, supported, and attended primarily for the benefit and convenience of the inhabitants of the city, though inuring ultimately to the benefit of the public. The right and privilege is given to the city for its own corporate benefit and immediate advantage. The maintenance, support, and attendance of the bridge are charged upon the city because of particular benefits to it. The bridge could not be maintained at all over this navigable river, except upon condition that it be managed with a draw so as to permit navigation of the river. Therefore the state, in granting the right and privilege to the city to maintain the bridge, granted it upon this condition and imposed upon the city the specific duty of managing the draw. The Supreme Court of the United States has spoken upon this point. In Weightman v. Corporation of Washington, 1 Black, 39, 17 L. Ed. 52, the question arose whether the city in the maintenance of a bridge within its limits was invested with power over the bridge as a public agent merely, or possessed its powers and was charged with its duties in that regard in its municipal or corporate capacity. The charter of the city provided that the corporation should have the sole control and management of the bridge and should be chargeable with the expense of keeping it in repair. The plaintiff alleged that the city negligently permitted the bridge to become out of repair, and unsafe and dangerous, and that, while he was lawfully passing over the bridge, it broke and gave way and he was injured. The court below instructed the jury to return a verdict for the defendant. On writ of error the city maintained that it was invested with power over the bridge as agent of the public and for public purposes exclusively, and therefore was not liable. The Supreme Court in disposing of this contention said:

"*   *   * The defendants insist that, being a municipal corporation created by an act of Congress, they are invested with the power over the bridge merely as agents of the public, from public considerations and for public purposes exclusively, and they are not liable for the nonfeasances or misfeasances of the persons necessarily employed by them to accomplish the object for which the power was granted. Municipal corporations undoubtedly are invested with certain powers, which, from their nature, are discretionary, such as the power to adopt regulations or by-laws for the management of their own affairs, or for the preservation of the public health, or to pass ordinances prescribing and regulating the duties of policemen and firemen, and for many other useful and important objects within the scope of their charters. Such powers are generally regarded as discretionary, because, in their nature, they, are legislative; and although it is the duty of such corporations to carry out the powers so granted and make them beneficial, still it has never been held that an action on the case would lie against the corporation, at the suit of an individual, for the failure on their part to perform such a duty. But the duties arising under such grants are necessarily undefined, and, in many respects, imperfect in their obligation, and they must not be confounded with the burdens imposed, and the consequent responsibilities arising, under another class of powers usually to be found in such charters, where a specific

and clearly-defined duty is enjoined in consideration of the privileges and immunities which the act of incorporation confers and secures. Where such a duty of general interest is enjoined, and it appears, from a view of the several provisions of the charter, that the burden was imposed in consideration of the privileges granted and accepted, and the means to perform the duty are placed at the disposal of the corporation, or are within their control, they are clearly liable to the public if they unreasonably neglect to comply with the requirement of the charter; and it is equally clear, when all the foregoing conditions concur, that, like individuals, they are also liable for injuries to person or property arising from neglect to perform the duty enjoined, or from negligence and unskillfulness in its performance."

The case was accordingly reversed.

The defendant in error cites four cases to support the proposition that in the operation of the bridge the city is engaged in the performance of a purely governmental duty: Daly, Adm'r, v. New Haven, 69 Conn. 644, 38 Atl. 397; Butterfield v. Boston, 148 Mass. 544, 20 N. E. 113, 2 L. R. A. 447; Corning v. Saginaw, 116 Mich. 74, 74 N. W. 307, 40 L. R. A. 526; and French v. Boston, 129 Mass. 592, 37 Am. Rep. 393.

French v. Boston was an action for damages alleged to be caused by the detention of plaintiff's schooner by the superintendent of a draw in a bridge. The court held that the duty imposed was a public duty, and therefore held the city not liable. There is no discussion of the question, no recognition of the well-settled distinctions in such cases, and no authorities are cited. The conclusion reached in that case is precisely the opposite of that reached in the case of Weisenberg v. Winneconne, supra, while in their facts the cases are practically identical.

Butterfield v. Boston in its facts is much like the case at bar, but the scope of the decision may be seen by the first sentence of the opinion:

"This case was tried upon the second count in the declaration, and the only question before us is whether the defendant is liable by reason of a defect in a highway."

The opinion closes as follows:

"The injury to plaintiff was caused, not by any failure of the city to perform its duty, but, as we have before said, by a momentary negligence of the gateman or draw tender. For this negligence the city is not responsible, and it cannot be indirectly held liable, upon the theory that this negligence created a defect in the street which the city by reasonable diligence might have remedied."

There was no discussion of the question whose servant the draw tender or gateman was, nor in what capacity, governmental or corporate, the city acted in the management and control of the bridge.

Corning v. Saginaw involved a state of facts similar to those in French v. Boston, and, like the latter case, cannot be reconciled with Weisenberg v. Winneconne.

Daly, Adm'r, v. New Haven is in its facts much like the case at bar, and the court held the city not liable. In the course of the opinion it is said:

"The duty to provide and maintain this bridge as a part of a public highway over the river, and the duty to build, maintain, and operate a suitable draw in the bridge for the benefit of the public highway up and down the river, are public governmental duties"—citing several Connecticut cases and French v. Boston, Butterfield v. Boston, and McDougall v. City of Salem, 110 Mass. 21.

McDougall v. Salem was an action by one of the crew of a schooner, who received injuries while attempting to pass through a draw, by reason of the insufficiency of the draw. The court held that by the action of the county commissioners, under a certain statute, the bridge became a part of the highway, that the statute only required the city to keep the bridge safe for travelers on the highway, that the plaintiff was not such a traveler, and there could be no recovery. This case, like French v. Boston and Corning v. Saginaw, cannot be reconciled with Weisenberg v. Winneconne. So far as the Connecticut cases cited in Daly v. New Haven are concerned, it may be observed that the United States District Court for the District of Connecticut, in Greenwood v. Westport, 60 Fed. 560, after an exhaustive review of the decisions of that state and elsewhere, held, in a case which in its facts was like the case of Weisenberg v. Winneconne, that "the operating of a draw in a drawbridge was a mere private corporate duty."

In our opinion the duty to maintain, support, and attend the Grand Avenue Bridge in Milwaukee is not a governmental, but a corporate, duty, that the negligence of the bridge tender is the negligence of the city, and that the doctrine of respondeat superior applies.

GROSSCUP, Circuit Judge (concurring). I assume that in Wisconsin, following the New England group of states holding the same way, neither town, village nor city is liable for the negligence of its officers having in charge the "maintenance and repair of highways"; that such officers, though appointed by the town, village or city, as "to the maintenance and repair of highways," are the officers and agents, not of the municipality, but of the state; the municipality to that extent, performing a state governmental function.

I assume also that in determining whether this rule is applicable to the facts of any case arising in Wisconsin, not before adjudicated by the Wisconsin courts, the general trend of the Wisconsin cases— the way in which the Supreme Court of Wisconsin in cases of this kind has been facing—must be kept in mind and followed.

It is admitted, however, that the precise case now being considered has never been decided by the Supreme Court of Wisconsin. The question it presents, therefore, is an open one, even according to the Wisconsin law, and must be dealt with as such by this court in its effort to find out what the law on the subject is.

That question is this: The city being under duty to operate a bascule bridge across a stream made navigable by the laws of the United States, and having appointed a bridge tender to attend to such operation—all needful guards, railings and other means of warning travelers having been provided also, to prevent a traveler from going upon the bascule when it is in operation—is the city

liable to such traveler, who, through the negligence of the bridge tender has been led to go upon the bascule when in operation, and has received injuries therefrom? The question may, according to my view, be answered in the following propositions:

1. The operation of a draw or bascule is in no sense, in the contemplation of the Wisconsin law, within the meaning of what is meant by the phrase "the maintenance and repair of highways." The bridge at rest may be a part of the highway, so that for injuries through defects, say in a plank, there might be no recovery from the city. But the process of turning this bridge around, or lifting it up, so that the highway is for the time interrupted, and the process of restoring the highway from this interruption, is a special service arising out of the discharge of a special duty, not contained or contemplated in the ordinary duty of maintaining and repairing highways. To hold otherwise, would be to extend unwarrantably, it seems to me, that plain and well established subdivision of the law.

2. Where in the performance of such a special service, an agent is employed by the city, the city must respond for the negligence of the agent to him who, being at the time and place in the exercise of his own rights, and without contributory negligence, has received injuries as the result of such negligence, even though the injured person be a traveler on the highway.

3. The liability of the city in this respect does not grow out of special statute. It is a liability that grows out of the general law in Wisconsin, and is based upon the general principle that where it is the special duty of a city, as a city, to do a given thing, and it is engaged in the attempted performance of that duty through an agent, the city must respond for the negligence of the agent.

These propositions, it seems to me, are inherent in the principles on which the Wisconsin cases, approximating this case, have been decided. In Mulcairns v. Janesville, 67 Wis. 24, 29 N. W. 565, the city was held liable for the negligence of its agent in the construction of the walls of a cistern whereby the plaintiff was injured, the court holding that it being the special duty of the city, as a city, to construct cisterns for fire purposes, and the city being engaged in the attempted performance of this duty through its own private agencies, the case was the common one of special employment for the performance of special service, for and on behalf of the city. The mere fact that the cistern was for the use of the fire department, was held not to make its construction a performance by the city of its duty under the governmental power to maintain a fire department; nor the fact that without such cisterns the governmental fire department would be practically useless; nor would the fact, I take it, that men otherwise connected with the fire department may have been employed to do this special service, have made the case a different one. The governmental function of the city, as to its fire department, is to put out fires. With the putting out of the fires, and the ordinary care-taking of the means through which that work is done, the governmental function begins and ends. What goes before, and what follows, though related to the putting out of

fires, and essential to the fire equipment, is to be regarded as a special service in whose performance the city, like any one else, is to be held responsible for the negligence of its agents. Note this then, the point of the case cited: That though the city be not liable for the way its officers perform the duty commonly known as fire protection, that exemption from liability begins and ends just where the duty of the fire department begins and ends—is not to be extended to any other performance of duty by the city, even though such performance may contribute to the means wherewith it performs its governmental duty. In other words, the Wisconsin court is not extending, as the case cited shows, the exemption of a duty beyond the plain, well defined class of governmental functions upon which the New England doctrine was built up.

In Weisenberg v. Winneconne, 56 Wis. 667, 14 N. W. 871, the city was held for the negligence of the bridge tender in not opening the draw in time to prevent collision with a vessel, whereby a traveler on the river vessel received injuries. Now the bridge was not in that case an obstruction, in law, of the river highway. The bridge was permitted, under the law; and was constructed in accordance with the law giving such permission. The fault of the city on which recovery was based, was not that the bridge, as constructed, was an unlawful obstruction, but that the draw, as negligently operated, made it for the time being, an obstruction resulting in injury to the traveler. The law contemplated that the bridge should be there just as it was, a part of the highway for travelers on land. The law contemplated also that the river should be there, just as it was, a highway for travelers on the river. But to the end that these two highways should be placed with reference to each other—so interlocked—that when one was in use, the other would not be open for use, the draw was interpolated, with a bridge tender to operate it; and because the operation of the draw was no part of the maintenance and repair of the highway, but was a special service that alternately opened and closed two intersecting highways, the rule applied to lack of "maintenance and repair" cases was not applied. Of course the decision related, in terms, only to the traveler by river. But I can see no reason why it should not apply, in principle, to the traveler on land as well—the point of the case being that the bridge tender was not an officer of the city, within the governmental duty of the city, to maintain and repair the highways, but a special servant to perform this special service, growing out of the intersection of the two highways, and the duty of the city, as a city, to so interlock them that both could be operated with safety.

Stephani v. Manitowoc, 89 Wis. 467, 62 N. W. 176, goes nearly to the extent of governing the case under consideration. Logically it discloses, I think, the principle that governs this case. The injury in that case was to a traveler on the land highway, falling into an open draw. The negligence for which the city was made responsible, was in not providing a guard, bar, or light, whereby the traveler would have been warned of the danger that an open draw presents. Now as to this traveler on the land highway, had it been the city's

duty, as a mere governmental division of the state performing a governmental function, to provide a bar, guard or light, that the traveler might not fall into the draw, the court would have been compelled to place the case among other cases relating to maintenance and repair of the highways, and have thus exempted the city from liability. But the court did not take that view. It held the city liable. And it could only have done this upon the principle that whatever might have been the ruling had the break in the continuity of the street been caused, say by some casual flood cutting through the highway, (though I am aware of no such case), the duty of safe guarding an open draw across the river, is a thing so different that, logically, it takes the draw bridge and its operation out of the rules that govern liability for lack of maintenance and repair of highways. And this being thus decided, the whole doctrine of immunity of cities under the Wisconsin law, from the consequences of negligence connected with the maintenance and repair of streets, stops short of the operation of a draw across a navigable stream, and the warning to be given travelers in that connection.

Indeed, I cannot discern upon what reasoning the law could hold the city liable to a traveler upon the river, under the doctrine of respondeat superior, and not hold it liable for the same character of negligence to a traveler on the land; or how it could hold the city liable to a traveler on land, for negligence in not providing a guard or warning lights, and not hold it liable, under the doctrine of respondeat superior, for the negligence of its agent in not using such guard or lights, after they were provided. An affirmance of the judgment below, it seems to me, would throw the whole law as already declared by the Supreme Court of Wisconsin, into disorder.

BAKER, Circuit Judge (dissenting). In addition to the averments recited in the statement of the case, the plaintiff alleged that the defendant "had not supplied or put in use any guards or warnings at the said approach to said bridge, but had left the approach from said Grand avenue to the bridge above described unguarded, unsafe and dangerous for pedestrians who desired to cross," and that on October 15, 1903, he served upon the city clerk a notice of the time, place and nature of his injury. At the argument plaintiff's counsel admitted that, inasmuch as the notice was not served within the time prescribed in the statute, no cause of action within section 1339, Rev. St. Wis., was stated in the complaint. Did the Circuit Court err in holding that, by the law of Wisconsin, no liability independent of the statute was shown?

The states are divided into two groups with antipodal views of the nature of the duty and resulting liability of a city in respect to the care of highways and bridges within its limits. The "general group" holds that the highways and bridges are the city's, and that the city is liable for negligence the same as a private corporation. This conclusion is sometimes based on the ground that the state has given the control to the city for its private advantage in "improving the territory within its limits" and in "adapting the territory to the pur-

poses of business and residence"; sometimes on the ground that the city, being a "voluntary" corporation as distinguished from the "involuntary" county and township corporations, and having sought charter advantages, will be held to have agreed to respond for negligence towards travelers, though the "involuntary" corporations are exempt. The theory of the "New England group," in holding that the city need not respond to travelers for the negligence of its highway and bridge officers in the absence of a statute expressly creating liability, is that all the highways and bridges are the state's; that the city, like the county, like the town (the township of the other group), is merely an agency of the state in performing the governmental service of caring for the public ways; that, though the city or county or town highway or bridge officers are servants of the city or county or town, the superior need not respond because the superior is an instrumentality of the state in this respect and no more liable to suit without leave than the state itself. This contrariety of view may have its roots in the differences between the Virginia "county" and the New England "town" governments in the old colonial days.

When a traveler asserts a city's liability for a negligent act or omission of a highway or bridge officer, the answer must be made according to the local law. Under no circumstances can the question become one of general law. Even in the absence of a statutory provision concerning the extent and conditions of liability, the question is bound to turn upon the construction of the local statutes which impose highway and bridge duties upon the cities. "It is purely local in its significance and extent. It involves simply a consideration of the powers and liabilities granted and imposed by legislative action upon cities within the state." Detroit v. Osborne, 135 U. S. 492, 498, 10 Sup. Ct. 1012, 34 L. Ed. 260.

Wisconsin transplanted the Massachusetts statutory scheme. Daniels v. Racine, 98 Wis. 649, 74 N. W. 553. Chapter 16, Rev. St. Wis. 1849, detailed the system of "Highways and Bridges." Upon municipalities, towns (townships), counties, villages and cities, the duty was laid alike as creatures of the state. For failure of duty to keep the highways and bridges open and safe for travel, section 103 of the chapter created an express liability. Section 109 required that "The provisions of this chapter relating to highways and bridges shall be construed to extend to all parts of the state, except where special provisions, inconsistent therewith, have been or shall be made by law in relation to particular towns, counties, cities or villages." The system continues in force. Rev. St. Wis. 1898, c. 52, §§ 1339, 1347.

This general scheme of duty and liability, cast by the state upon all her municipalities alike, with no distinction and no basis for distinction between "voluntary" and "involuntary" (for a city charter is not a contract, but governmental regulation, changeable at the will of the Legislature—Washburn v. Oshkosh, 60 Wis. 453, 19 N. W. 364), applies to Milwaukee. Kittredge v. Milwaukee, 26 Wis. 46; Harper v. Milwaukee, 30 Wis. 365; Daniels v. Racine, 98 Wis. 649, 74 N. W. 553. The sections of the charter relating to the Grand Avenue Bridge are not in conflict, but entirely harmonious, with

the pre-existent duty. They merely direct how the subsisting duty shall be performed at the specific place, with no legislative attempt at increase or diminution of liability. Indeed, it has been ruled that a charter exemption, violative of the general scheme of highway duty and liability, is unconstitutional. Hincks v. Milwaukee, 46 Wis. 559, 1 N. W. 230, 32 Am. Rep. 735.

That Wisconsin should look to Massachusetts for interpretation of adopted legislation would naturally be expected. Section 103, c. 16, Rev. St. 1849, created liability without limitation of amount or condition of giving notice. Milwaukee v. Davis, 6 Wis. 377, decided in 1857, relied on by plaintiff to prove a liability independent of statute, holds the city answerable for negligence of highway officers without mentioning the statute, but in support of the ruling cites New England cases which show the liability to be purely statutory. After section 103 was amended (in line with New England statutes) by adding conditions and limitations, cases arose in which the conditions were combated, and the Wisconsin Supreme Court expressly ruled that the liability was wholly statutory and could therefore be cut down or taken away by the Legislature at will. Stilling v. Thorp, 54 Wis. 528, 11 N. W. 906, 41 Am. Rep. 60; Harper v. Milwaukee, 30 Wis. 365; McLimans v. Lancaster, 63 Wis. 596, 23 N. W. 689; Sowle v. Tomah, 81 Wis. 349, 51 N. W. 571; Reed v. Madison, 83 Wis. 171, 53 N. W. 547, 17 L. R. A. 733; Daniels v. Racine, 98 Wis. 649, 74 N. W. 553. In Reed v. Madison, the court, after holding that municipal liability for negligence of highway officers was wholly statutory and that even that liability was available only to travelers, considered a question which had not theretofore arisen in Wisconsin, whether recovery could be had by a child who was using the street for travel and at the same time for play. "This court, having followed Massachusetts in respect to other questions of statutory liability, may well accept the decisions of that state as sufficient authority on this question also." In Stephani v. Manitowoc, 89 Wis. 467, 62 N. W. 176, plaintiff's intestate fell into an open draw. Liability under section 1339 was upheld on account of failure to provide barriers and lights. Counsel for the city, among other contentions, claimed that the alleged cause of action was based on the negligence of the bridge tender and that there was no liability because such a case was not within the section. Answering this claim, the court said:

"If the city had provided suitable barriers and lights, and the bridge tender had omitted to use them, that would be a different case. It would be the case which the defendant argues. It would be like the question decided in Butterfield v. Boston, 148 Mass. 544, 20 N. E. 113, 2 L. R. A. 447, which would be a strong authority if applicable."

Wisconsin was free to join either of the opposing groups. With which she has allied herself seems unmistakable. What, then, is the duty of this court? To put ourselves in the Wisconsin atmosphere; to view the case from Wisconsin's attitude; to accept the premises, the arguments, the conclusions, the exclusions, of the Wisconsin court as indicating the Wisconsin law; for only the accident of

citizenship enabled plaintiff to come into the federal court with this question of local law.

The two doctrines start off facing in opposite directions. The "general group" furnishes no exact precedent on the facts of this case. The "New England group" does. If the question, as one of "case law," be taken as 10 miles from the parting of the ways, the "New England group" has traveled the whole distance, except that Wisconsin has gone only 9 as yet. To determine the direction of the next step Wisconsin would take, it is a wrong method to travel the 9 miles which the "general group" has gone in the opposite direction, infer what that group would do, and then drag Wisconsin 18 miles to take that step.

Since this record, like a patent case, must be read in the light of the particular art, no progress is made by pointing out the correspondences between the two groups in respect to the abstract propositions that a city is liable for private acts and is not for governmental, and the concrete instances of liability for proprietary acts and nonliability for acts of fire or police or health officers; for the split is not there. In Maximilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468, the city was held not liable for the negligence of a city ambulance officer, on the ground that the service was for the public generally and not primarily for the city. The case would read as well for a street or bridge officer, if the New York statutes were construed to cast on cities the duty of caring for streets and bridges in the interest of the whole people and not in the private interest of the city. Oliver v. Worcester, 102 Mass, 489, 3 Am. Rep. 485, is an instance of the "New England group's" holding a city liable as a private proprietor. It does not touch the highway question. In Weightman v. Washington, 1 Black, 39, 17 L. Ed. 52, the Supreme Court sat as a local court for the District of Columbia, and construed local legislation along the theory of the "general group."

The particular art herein involved being the construction of Wisconsin's statutory scheme of highway and bridge duty and liability, it is a wrong method to take Wisconsin nonhighway and nonbridge decisions and from them attempt to prove that the Wisconsin Supreme Court logically should, and therefore probably would, hold that Milwaukee maintained and operated the drawbridge for its private benefit and advantage. And the attempt seems abortive.

In Durkee v. Kenosha, 59 Wis. 123, 17 N. W. 677, 48 Am. Rep. 480, the city was made to respond for the seizure of Durkee's goods under a void special assessment for the opening of a street. The officers acted under color of authority. The superior was liable because in truth the superior had no authority to take the property without due process of law.

To Nicolai's complaint against the town of Vernon and highway officers, who were about to include a part of his land within a highway (88 Wis. 551, 60 N. W. 999), the town demurred on the ground that it was not a proper party defendant. The officers in good faith attempted to act as officers of the town upon which was cast the duty of caring for the highway. The town was therefore enjoined from invading private property without right.

Little v. Madison, 42 Wis. 643, 24 Am. Rep. 435, involves the same

principle. The city licensed a bear show to be held in the streets. No authority; but there was color, by reason of the general power to license shows at proper places.

The nonapplicability of such decisions to a case of a highway officer's negligent performance of an imposed duty to travelers is quite obvious. The city, through its officer, in keeping the highway open and safe for travel, is performing a service for the sovereign (according to the theory of the "New England group"), and is not answerable in the absence of a statute creating liability. In doing acts not authorized by the sovereign, the city, of course, cannot plead the sovereign's exemption from suit. The court, in Ziegler v. West Bend, 102 Wis. 17, 78 N. W. 164, said:

"That rule applies only to the doing of something which the city has no right to do, rendering a street or highway dangerous for public travel, not to a failure to do properly what a city has a right to do."

And in Bunker v. Hudson, 122 Wis. 43, 99 N. W. 448:

"In grading the street the city was doing one of the things which, as a municipal corporation, it was authorized to do. That work was done in an improper or negligent manner, so as to invade (which it had no right to do) the rights of the plaintiffs, not as members of the public, but as adjoining proprietors. Towards them the city's act was not governmental, but proprietary."

Towards travelers on the highway, the same acts of the same officers would be public or governmental, and not private or proprietary.

In Weisenberg v. Winneconne, 56 Wis. 667, 14 N. W. 871, the injury resulted from the failure of the village's agents to open the draw in a bridge maintained by the village over Wolf river, a navigable waterway, whereby the vessel on which the injured person was traveling collided with the bridge. The court declared that the village's liability rested "upon the plainest of elementary principles." The complaint was bottomed on the charge that the village "obstructed the river and neglected to remove the obstruction." The village was granted by the state the right to maintain the bridge only on the condition that the draw should be opened "when the river at this point should be required for the navigation of vessels." "When this duty was neglected, then the bridge became and was a complete obstruction to the navigation of the river." These facts support a "straight common-law action," or one based on "section 1598, Rev. St. Wis. 1898" (which makes any obstructor of navigation liable for damages), or one, it may be added, founded on the admiralty jurisdiction of the United States. These are the fundamental principles on which the court predicated the village's liability. Of course, the question whether the village, in obstructing navigation, was entitled to plead the sovereign's exemption, was not raised or discussed by the court, for the very good reason that the state could not grant the exemption. This results from the difference in the state's relation to landways and waterways. Respecting landways, the United States may build and control a road through a state; but the roads built by the sovereign people within a state are the state's highways. The parts thereof within cities the state may require to be maintained by the cities. Wis-

146 F.—42

consin had the right to adopt the plan by which the service is govern-mental and the cities are clothed with the state's exemption. Respecting waterways, Wisconsin had no such power. Over the navigable waters of the United States the several states by the Constitution (and Wisconsin as well by the Ordinance of 1787) have made the federal government the ultimate sovereign. The sovereignty has been exercised by taking jurisdiction of drawbridges and by declaring it to be unlawful to obstruct navigation by failure to open draws. Act July 5, 1884, c. 229, § 8, 23 Stat. 148 [U. S. Comp. St. 1901, p. 3532]; Act Aug. 18, 1894, c. 299, § 5, 28 Stat. 362 [U. S. Comp. St. 1901, p. 3538]; Act March 3, 1899, c. 425, § 17, 30 Stat. 1153 [U. S. Comp. St. 1901, p. 3534]. No obstructor of navigation, whether an individual, a business corporation, or a city, can rightfully plead a local statute or charter as a defense. And if a local court should deny a waterway traveler his rights under the paramount law, the federal courts, when properly invoked, will disregard the local decisions (Workmen v. New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314; Greenwood. v. Westport [D. C.] 60 Fed. 560), though in respect to a landway traveler's rights the duty of the federal courts is to apply the local law (Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260). The Wisconsin Supreme Court reached its conclusion not merely by putting the common law of the state in line with the general maritime law, but also by calling attention to the fact that the Legislature had expressly declared a liability for obstructing navigation by failure to open the draw. And in order that this decision of a waterway case might not be confounded with Wisconsin's landway doctrine, the court said:

"The only *highway* [the italics are the court's] in question in this case is this navigable river, and the liability of towns in respect to roads and bridges is not involved, for the deceased was not seeking to use the bridge for the purpose of travel, and it is complained of only as an obstruction to navigation."

Thus the court in effect has declared that the only similarity between that case and this consists in the fact that in each there is a drawbridge, and that in principle they are as different as if Winneconne through her officer had obstructed navigation by dumping rocks into the river.

The conclusion that the Winneconne Case proves that the rule of respondeat superior applies to this controversy involves a further error than the rejection of the premises, the reasoning, the spirit and scope, of the decision as rendered by the Wisconsin Supreme Court. Because Winneconne was held liable to Weisenberg for the negligence of a bridge tender, it is assumed that a city would therefore be liable to any one who was injured through the negligence of a bridge tender, no matter what was the measure of duty owing by the city to the injured party. That in Wisconsin a city may be answerable for the acts of its highway officers to one injured person, and for the same acts of the same officers not to another, is clear. Liability depends on the nature of the right that can be asserted by the plaintiff, that right being the correlative of the duty owing to him by the city. For example: Highway officers in grading a highway negligently obstruct

a gutter, so that water flows over the sidewalk and into adjoining cellars. The water freezes and makes the walk dangerous, to the knowledge of the officers. The city is liable to any adjoining proprietor independently of statute, because it had no right to invade private property; not liable to a traveler on the highway independently of statute, because the officers were doing, though negligently, what they were authorized to do for the city on behalf of all public travelers; not liable, even under the statute, to one who uses the walk merely for skating, because to him no duty has been cast upon the city.

The irrelevancy of Mulcairns v. Janesville, 67 Wis. 24, 29 N. W. 565, is pointed out by the Wisconsin Supreme Court. The city claimed exemption on the ground that, in building the cistern it was performing, through officers appointed for that purpose, a governmental function. But the evidence was otherwise. The city specially employed a mason to manage the construction. "The distinction between the two cases is very wide and quite apparent. * * * It was the legal duty of the city to construct cisterns for fire purposes, and it was engaged in the attempted performance of this duty through its own private agencies, and not through the fire department or its officers, or other officers of the city whose duty it was to perform such work."

The supposition that Stephani v. Manitowoc, 89 Wis. 467, 62 N. W. 176, proves that a drawbridge is not ruled by the Wisconsin highway doctrine, discloses a misapprehension. It was because the failure to provide barriers and lights at the draw was a failure to maintain the highway in a safe condition for travel that the city was held liable. And that liability was predicated, not at all on the theory that the maintenance and operation of a drawbridge is a special, private function of a city, or on the fancy that a drawbridge is not a bridge, but on the statute, which creates the liability for failure to perform properly the governmental function. If the negligence in that case is of the same character as in the present one, the plaintiff here would be defeated by his failure to give the statutory notice.

Naumburg counts only on the duty Milwaukee owes to travelers of highways. Bridges, so far as land travelers are concerned, are merely parts of highways. Draws, as to them, are merely parts of bridges. Draws are put in, not in aid of navigation, but solely in aid of land travel and as a condition of maintaining bridges over navigable waters at all. Operation of draws requires bridge tenders. Milwaukee's charter makes bridge tenders city officers as clearly as it does firemen and policemen. Maintenance and operation are put upon Milwaukee in equal terms, without distinction of duty and liability. Indeed, operation is necessarily a part of the duty of maintaining the highway. On the basis, then, that the bridge tender was a highway officer whose duty was imposed in the interest of the general public, of which Naumburg was one, there is no reason to doubt what the Wisconsin Supreme Court, unless it should reverse a half century's unbroken trend, would do with this question of local law.

The judgment of the Circuit Court will be reversed, and the cause remanded, with directions to overrule the demurrer to the complaint.